**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JEREMY CIOE and SAROM PED, on behalf of themselves and all similarly situated persons, | ) ) ) |
| Plaintiffs, | ) ) |
| | ) No. 1:11-cv-1002 |
| v. | ) |
| | ) Judge Maria Valdez |
| CELLCO PARTNERSHIP, AIRTOUCH CELLULAR, and VERIZON WIRELESS TEXAS, LLC, all d/b/a VERIZON WIRELESS, | ) ) ) |
| | ) |
| Defendants. | ) ) |

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND**
**NOTICE TO SETTLEMENT CLASS**

Plaintiffs Jeremy Cioe and Sarom Ped ("Class Representatives" or "Plaintiffs"), individually and on behalf of themselves and all similarly situated move this Court for Preliminary Approval of Proposed Settlement, Notice to the Settlement Class, and Conditional Settlement Class Certification on their claims that Defendants violated state overtime acts and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*.

**I.     INTRODUCTION**

The terms of the settlement, entered into on April 1, 2013, by and between Plaintiffs, on behalf of themselves and all similarly situated persons (collectively, the "Class" or the "Class Members"), and Defendants Cellco Partnership, Airtouch Cellular, and Verizon Wireless Texas, LLC, all d/b/a Verizon Wireless, (collectively, "Defendants" or "Verizon Wireless"), are contained in the parties' memorialized Agreement and Stipulation of Settlement and Release ("Stipulation"), attached as Exhibit 1. Plaintiffs and Verizon Wireless now wish to begin the

settlement approval process outlined in the *Manual for Complex Litigation* (Fourth) §§ 21.632-.635 (2012). They seek entry of an order:

- Granting preliminary approval of the settlement;

- Certifying a Class for settlement purposes only and appointing Plaintiffs as the Class Representatives, appointing as Class Counsel Robin Potter & Associates, P.C. including Robin Potter, and Progressive Law Group LLC including Mark Bulgarelli, Ilan Chorowsky, and Alex Stepick;

- Approving the parties' proposed form and method of giving Class members notice of the action and proposed settlement;

- Directing that notice be given to Class members in the proposed form and manner; and

- Setting a hearing, within not less than 120 days, on whether the Court should grant final approval of the settlement, enter judgment, award attorneys' fees and expenses to Plaintiffs' counsel, and approve incentive awards to the Plaintiffs.

The settlement provides substantial benefits via a Settlement Fund established for the benefit of the Class members. The settlement includes a *cy pres* mechanism in the event that Class claims do not consume the Settlement Fund. (Ex. 1 ¶ 10(c)(i)). The agreed beneficiaries of the *cy pres*, to be used for the purpose of protecting worker rights, or promoting job opportunities, job quality, or workplace fairness, shall be (1) the Center for Urban Economic Development at the University of Illinois, Chicago and (2) the Donald Vial Center for Employment in the Green Economy at the University of California-Berkeley Institute for Research on Labor and Employment, and shall be designated in the Notice of Pendency of Class Action and Proposed Settlement ("Notice"). (*Id.*). A third-party Claims Administrator will administer the settlement claims process, monitored by Plaintiffs' counsel. (Ex. 1 ¶ 11). Verizon Wireless will pay out-of-pocket for notice to the Class, and said notice will be administered by first class mail. (Ex. 1 ¶¶ 10(c)(vi), 12).

The proposed settlement addresses Plaintiffs' litigation objectives, and falls within the range of fairness for final approval. The settlement was negotiated by lawyers experienced in complex litigation. The parties engaged in two settlement conferences on July 10, 2012 and on August 10, 2012, in Chicago, Illinois, before the Honorable Maria Valdez. (Ex. 1 ¶ 4). For these reasons, the settlement enjoys a presumption of fairness and should be submitted to Class members.

## II.     SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.  **Litigation.**

#### i.      The *Cioe* Litigation

On or about February 11, 2011, Plaintiff Jeremy Cioe filed a proposed Class Action Complaint in the United States District Court for the Northern District of Illinois on behalf of himself and similarly situated Verizon Wireless workers nationwide, seeking relief relating to payment of overtime adjustments attributable to bonuses, commissions, and other incentive compensation under the Fair Labor Standards Act ("FLSA") and applicable state laws.

#### ii.     The *Ped* Litigation

On or about March 16, 2011, and as amended on May 11, 2011, Plaintiff Sarom Ped filed a proposed Class Action Complaint in the United States District Court for the Northern District of Illinois on behalf of himself and similarly situated Verizon Wireless workers nationwide. That Complaint alleged, *inter alia*, violations of the FLSA and state wage and overtime laws, for failing to pay Plaintiffs and Class Members wages and overtime. Plaintiff Ped worked as an assistant store manager for Verizon Wireless and as such was paid under the compensation program Verizon Wireless titles "Salary Plus." Plaintiff Ped also alleged that the Salary Plus method of payment led to non-payment or underpayment of overtime. In his Amended

Complaint, filed on or about May, 11, 2011, added allegations and sought relief relating to payment of overtime adjustments, in Verizon Wireless retail sales locations.

     iii.    Motions to Relate and Consolidate

On or about July 2, 2012, Plaintiffs filed a Motion to Relate and Reassign Cases, requesting to relate and reassign the *Ped* action, Case No. 1:11-cv-01851, pending before the Honorable James B. Zagel, with the *Cioe* action, Case No. 1:11-cv-1002, pending before the Honorable Sharon J. Coleman. Furthermore, while the aforementioned motion to relate and reassign was still pending, on January 23, 2013, the Parties filed a Joint Motion to Consolidate Cases and for Leave to File Amended Consolidated Complaint. On January 29, 2013[1], the Court entered an order consolidating the *Ped* and *Cioe* actions, granting leave to file a consolidated complaint, and additionally, on February 4, 2012 the Court found the previously filed Motion to Relate and Reassign Cases moot due to consolidation of the actions.

Plaintiffs filed a Consolidated Class Action Complaint, on or about March 19, 2013, which asserts claims under the FLSA and state overtime laws, individually and on behalf of Verizon Wireless workers at retail sales locations nationwide, for improper and untimely calculation and payment of overtime adjustments to the regular rate of pay based upon commission, bonus or other incentive compensation; underpaid overtime compensation for workers classified as Salary Plus who were paid overtime at a half-time rate; unpaid overtime compensation for deductions of overtime recorded or submitted by Class Members; and penalties, liquidated damages, and attorneys' fees and costs.

---

[1] On April 8, 2013, the Court entered an order amending the January 29, 2013 order to reflect that the *Ped* and *Cioe* matters were consolidated for all purposes.

On or about March 27, 2013 the Parties consented to have Magistrate Judge Maria Valdez conduct all further proceedings in this matter and on April 8, 2013 an order was entered referring the consolidated action to the Honorable Maria Valdez.

**B.  Case Development and Settlement Negotiation.**

Counsel for Plaintiffs engaged in extensive exchange of documents, data, information, and informal discovery with Verizon Wireless over a period of more than fifteen months. Beginning in May of 2011, Verizon Wireless began a rolling production which continued up to the date of the first mediation between the parties on July 10, 2012, through the interim between mediations and up to the second mediation on August 10, 2012.  At Plaintiffs' continued requests, Defendants produced, post-mediation, additional documentation and confirmatory discovery.  These rolling productions include, for example, productions of payroll data totaling more than sixty (60) million unique lines of code, time records for the named Plaintiffs and for a statistically relevant sampling of randomly selected Class Members, and documents evidencing relevant policies and procedures in effect during the relevant time period.  The documents alone, not including the millions of lines of computer code, represent almost eighteen hundred pages of relevant time sheets and policy documents.

Defendants have continued to produce documents for purposes of confirmatory discovery, including payroll data for every single member of the Class and further policy and procedure documentation spanning the breadth of the settlement class period.

Plaintiffs' counsel and their experts have engaged in extensive analysis, of the data and documents produced to evaluate the strength of the claims advanced and the extent of damages. Plaintiffs' counsel have expended significant effort to review and analyze Defendants' production and have continued to do so to ensure that the confirmatory discovery produced

supported the contemplated settlement. Plaintiffs' counsel have engaged consulting experts for a multiplicity of tasks, in order to, *e.g.*, write custom code and provide expert analysis to synthesize and analyze the significant amounts of computer code and samples of time records produced. In addition to the discovery efforts, Plaintiffs' counsel have conducted substantial legal analysis of state overtime laws and case law applicable to the claims and facts discovered in the cases.

Plaintiffs' discovery efforts have thus involved the same level of analysis and synthesis as any discovery process in the course of full litigation of the claims would have. The results of these efforts were instrumental in the effective settlement of the claims on advantageous terms for the Class. In addition to discovery, counsel for the Parties engaged in extensive initial arms-length adversarial discussions, exchanging formal correspondence and holding phone conferences, over a period of approximately twelve months preceding formal mediation, during which counsel presented position statements, damages claims, results of internal investigations or data compilations, and responses.

The parties' discovery efforts described above and initial negotiations by formal correspondence and phone led the parties to agree to a formal mediation before the Honorable Maria Valdez. The parties engaged in a mediation session before the Honorable Maria Valdez on July 10, 2012. At the first mediation, counsel for the Plaintiffs made a full presentation of the case, including the strength of the claims asserted and a summary of the math and underpinnings of their claims. The mediation involved significant back and forth between the parties on the merits of the claims, the availability of liquidated damages and the amounts of any damages available. The initial mediation did not result in an accord, but the parties agreed to continue talking and to attempt a follow-up mediation before Judge Valdez.

6

Following the July 10, 2012 mediation session the Plaintiffs requested further discovery and engaged in substantial legal and analytical analysis. Defendants in turn produced further documents and data.

The parties engaged in a second arms-length adversarial mediation session with the Honorable Maria Valdez on August 10, 2012. This second mediation lasted over eight (8) hours and produced an agreement in principle on the monetary aspects of settlement late in the evening. Following this second mediation session, many issues remained and the parties engaged in extensive negotiations and discussions, by phone, correspondence, and face-to-face negotiation over the course of more than five months to complete a final settlement of all of the claims in both the *Cioe* and *Ped* matters.

### C. The Terms of the Proposed Settlement.

        i.     The Settlement Class

Under the terms of the proposed settlement, Verizon Wireless will provide significant benefits to the Class and Subclass. The "Class" (or "Settlement Class") is comprised of all persons employed in a Verizon Wireless retail sales location in the United States (i.e., a store, kiosk, or in-store location) who were classified and paid overtime as a nonexempt or Salary Plus employee at any time from March 16, 2008 to and including February 15, 2013. The "Subclass" (or "Settlement Subclass") is comprised of all persons employed in a Verizon Wireless retail sales location in the United States (i.e., a store, kiosk, or in-store location) who were classified and paid overtime as a Salary Plus employee at any time from March 16, 2008 to and including February 15, 2013 (references herein to the "Class" and "Class Members" include the Subclass and Subclass Members unless explained otherwise).

The following are excluded from the settlement:

- Claims, judgments or settlements for work performed at call center locations serving Verizon Wireless customers or customers of any Released Party or where Verizon Wireless sales or service has been provided primarily via telephone, internet or other virtual means rather than in person.

- Claims, judgments or settlements for work performed for resellers of Verizon Wireless products or services.

- Any claim, judgment or settlement in the lawsuit, *Atzimba Cisneros v. Cellco Partnership,* Case No. JCCP 4693, pending in the California Superior Court for Los Angeles County, on behalf of class members in California, except such claims, judgments, or settlements concerning the calculation or untimely or insufficient payment of paid overtime adjustments to the regular rate of pay based upon commission, bonus or other incentive compensation, and retroactive deductions of overtime recorded by Class Members as worked.

- Persons who were members of a previous settlement class concerning claims of unpaid compensation in the lawsuit *Garnica v. Cellco Partnership et al.*, Case No 08-476827, resolved in the California Superior Court for San Francisco County, and who worked at one or more Verizon Wireless retail locations and time periods that are covered entirely by the *Garnica* settlement. Class and Subclass Members whose periods of employment concerning allegedly unpaid compensation are released partially by *Garnica* will only be included in this Settlement to the extent they worked at a Verizon Wireless retail sales location during a period not covered by the *Garnica* settlement. In such a case, an individual's recovery of benefits under this settlement will be pro-rated by excluding the

amount of time worked at a Verizon Wireless retail location that is released by the *Garnica* settlement.

- Current and former officers of each of the Defendants, Defendants' counsel, Plaintiffs' counsel, and any member of the judiciary presiding over this action.

      ii.     Relief Available to the Class

Verizon Wireless will create a Settlement Fund in the amount of Seven Million Seven Hundred and Twenty-One Thousand Dollars ($7,721,000.00). (Ex. 1 at ¶ 9). The Settlement Fund will cover all payment obligations of Verizon Wireless under this settlement, unless otherwise specified by the Stipulation, including all attorneys' fees and costs, the enhancement payments to the Class Representatives, and any other payments provided by the settlement. (*Id.*). For example, as otherwise specified by the Stipulation, Verizon Wireless' payment of the costs of claims administration and its tax obligations will not come from the Settlement Fund. Payments to Class Members will be on a "claims-made" basis. (Ex. 1 at ¶10(c)(i)). Class Members must submit valid and timely Class Member Claim and Opt-In Forms. (*Id.*). The dollar amount each Class Member will recover will depend on the number of Class Members making a claim. (*Id.*).

Specifically, Class member payments will be distributed *pro rata*, in proportion to the total number of each Claimant's "shares" divided by the total number of "shares" of all Class members who submit a valid and timely Class Member Claim and Opt-In Form multiplied by the Net Settlement Amount ("NSA"). (Ex. 1 ¶ 10(c)(i)).

1.    *Annual True-up Claims*:

These claims include all alleged untimely payments of annual overtime adjustments to the regular rate of pay based upon commission, bonus or other incentive compensation. Each

dollar recorded as paid to a Class Member for an annual overtime adjustment for the time period June 1, 2008 through February 11, 2012 shall be assigned a share value equal to the Net Settlement Amount multiplied by 40% and then divided by the total number of dollars paid to the entire Class in annual overtime adjustments for the period June 1, 2008 through February 11, 2012. (*Id.*).

2.      *Monthly True-up Claims (Timing and Calculation)*:

These claims include all alleged improper and untimely calculations and payments of monthly overtime adjustments to the regular rate of pay based upon commission, bonus or other incentive compensation.  Each dollar recorded as paid to a Class Member for a monthly overtime adjustment for the time period March 16, 2008 through February 11, 2012, shall be assigned a share value equal to the Net Settlement Amount multiplied by 30% and then divided by the total number of dollars paid to the entire Class in monthly overtime adjustments for the period March 16, 2008 through February 11, 2012. (*Id.*).

3.      *Deduction Claims*:

These claims include all alleged unpaid overtime compensation for deductions of overtime recorded or submitted by Class Members.  Each overtime hour recorded as paid to a Class Member for the time period March 16, 2008 through February 15, 2013, shall be assigned a share value equal to the Net Settlement Amount multiplied by 5% and then divided by the total number of overtime hours paid to the entire Class for the period March 16, 2008 through February 15, 2013. (*Id.*).

4.      *Fluctuating Work Week Claims (For Salary Plus Workers)*:

These claims include all alleged unpaid overtime compensation for workers classified as Salary Plus who were paid overtime at a half-time rate.  Each overtime hour recorded as paid to a

Subclass Member under the Salary Plus program for the time period March 16, 2008 through February 15, 2013, shall be assigned a share value equal to the Net Settlement Amount multiplied by 25% and then divided by the total number of overtime hours paid under the Salary Plus program to the entire Subclass for the period March 16, 2008 through February 15, 2013. (*Id.*).

To determine share values and calculate NSA Payments, the amount of overtime adjustments or overtime hours (or fractions thereof) paid shall be based upon Defendants' payroll data, subject to the provisions for a Class Member to dispute said payroll data contained in the Stipulation.  (*Id.*).

   iii.  Class Notice and Claims Administrator

The Claims Administrator will be selected by the Defendants with approval of Class Counsel.  The payment of the fees and costs of the Claims Administrator for work done is not dependent on the outcome of this settlement, and will be paid by Verizon Wireless out-of-pocket and not from the Settlement Fund, regardless of the outcome of the settlement. (Ex. 1 ¶ 10(c)(vi)).

A Notice of Pendency of Class Action and Proposed Settlement ("Class Notice") approved by the Court shall be sent by the Claims Administrator to the Class Members by first-class mail (U.S.P.S.). (Ex. 1 ¶12).  Enclosed with the Class Notice will be a Claim and Opt-In Form, including instructions as to how a Class Member may submit a Request for Exclusion from this settlement or object to the settlement, which are also subject to approval by the Court. (*Id.*).

The Claims Administrator shall publish notice online by establishing a settlement website including, *inter alia,* copies of relevant settlement papers such as the Stipulation, Class Notice,

and Claim and Opt-In Form. (Ex. 1 ¶11). The Claims Administrator will also establish a toll-free telephone number to field and service Class Member communications regarding the settlement; a Claims Administrator mailing address, email address and facsimile transmission telephone number to submit Claim and Opt-In Forms; online means to complete, electronically sign and submit the Claim and Opt-In Form via the settlement website; contact information for Class Counsel; and a list of frequently asked questions and responses. (*Id.*).

Claim forms submitted by Class Members must be postmarked within Sixty (60) days of the date Notice is mailed. (Ex. 1 ¶ 12(b)). Class Members will have Ninety (90) calendar days after mailing of the Settlement Payments to cash their checks, and this deadline will be clearly disclosed to Class Members on the settlement checks. (Ex. 1 ¶ 10 (c)(viii)). If Class Members do not cash their settlement payment checks within the 90 day period, their settlement checks will be void and a stop-pay will be placed on such checks. (*Id.*). All un-cashed settlement payments shall be treated as *cy pres* trust Remainder Amounts. (Ex. 1 ¶ 10(c)(i)).

        iv.      Exclusion, Objection and Release Provision

Class Members will have sixty (60) days from the date on the Notice to object or opt to be excluded from the settlement. The Notice will provide instructions should any Class Member wish to exclude themselves from or object to the settlement. Such elections must be made in writing as provided in the Notice (Ex. 2) and must be mailed to the Claims Administrator and postmarked on or before the Sixtieth (60th) day after the Notice is mailed. *Id.*

Except for those Settlement Class members who exclude themselves in compliance with the above dates, and except with respect to FLSA claims where no claim form is timely submitted, all Settlement Class members will be bound by the final approval order, the judgment, and the releases set forth in the Stipulation. (Ex. 1 at ¶ 16). Settlement Class members will

grant Verizon Wireless a release as specified in ¶ 16 of the Stipulation.  Each Named Plaintiff shall execute a general release of all claims.  (Ex. 1 at ¶ 17).

> v.      Enhancement Awards and Attorneys' Fees and Costs

Subject to Court approval, or as otherwise ordered by the Court, Verizon Wireless agrees to pay enhancement awards to Jeremy Cioe of up to Twelve Thousand Five Hundred Dollars ($12,500.00) and to Sarom Ped of up to Twelve Thousand Five Hundred Dollars ($12,500.00) for their services as Class Representatives.  (Ex. 1 ¶ 10 (c)(v)).  These payments are for the Class Representatives' direct contributions to the litigation including a full release of their claims against Verizon Wireless.  (Ex. 1 ¶ 17).  These payments are in addition to the claim share to which the Class Representatives are entitled along with other claiming Class Members.  (*Id.*).

Verizon Wireless agrees not to oppose, and to pay, in the amount ordered by the Court, an award by the Court of Class Counsel attorneys' fees, costs and expenses in the total amount of up to Thirty Three and One Third Percent (33 1/3%) of the maximum total payment under the Settlement Fund, before any other deduction or distribution from the Settlement Fund. (Ex. 1 ¶ 10(c)(iv)).

> vi.     Unclaimed Funds Will go to *Cy Pres* Recipients

After distribution to the Class Members, any remainder, to the extent there is any shall create a *cy pres* trust.  (Ex. 1 ¶  10(c)(i)).  The "Remainder Amounts" shall include un-cashed distribution settlement checks/payments consistent with applicable law as well as any unclaimed funds.  (*Id.*).  The beneficiaries of the *cy pres*, to be used for the purpose of protecting worker rights, or promoting job opportunities, job quality, or workplace fairness, shall be (1) the Center for Urban Economic Development at the University of Illinois, Chicago and (2) the Donald Vial

Center for Employment in the Green Economy at the University of California-Berkeley Institute for Research on Labor and Employment, and shall be designated in the Notice. (*Id.*).

## III. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A. The Settlement Of A Class Action Is Favored And Should Be Preliminarily Approved If It Falls Within The Range Of Reasonableness.

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *Airline Stewards, Etc. v. American Airlines*, 573 F.2d 960, 963 (7th Cir. 1978) ("[S]ettlements are entered into because of 'the very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense. . .'") (internal citation omitted); *see also Newberg on Class Actions* § 11.41 (*Fourth*) (2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Where, as here, the parties propose to resolve class action litigation through a Class-wide settlement, they must obtain the Court's approval. *See* Fed. R. Civ. Proc. 23(e). The typical process for approval of class action settlements is described in the *Manual for Complex Litigation* (Fourth) §§ 21.632-.634 (2012). The steps are:

1. Preliminary approval of the proposed settlement at an informal hearing;
2. Dissemination of mailed and/or published notice of the settlement and fairness hearing to all affected Class members; and
3. A "formal fairness hearing," or final approval hearing, at which Class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. [*See id.*].

This procedure, commonly employed by federal Courts, serves the dual function of safeguarding Class Members' procedural due process rights and enabling the Court to fulfill its role as the guardian of the Class Members' interests. *See Newberg*, § 11.25 (quoting *Manual for*

14

*Complex Litigation* (Second) (1985)). "Although such settlements must be approved by the district court, its inquiry is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citation omitted). "By definition, a fair settlement need not satisfy every concern of the plaintiff Class, but may fall anywhere within a broad range of upper and lower limits. '[T]he essence of settlement is compromise ... a solution somewhere between the two extremes.'" *Alliance To End Repression v. City of Chicago*, 561 F. Supp. 537, 548 (N.D. Ill. 1982) (internal citation omitted).

By this motion, Plaintiffs ask that the Court take the first step in the settlement approval process and grant preliminary approval of the settlement. Plaintiffs further request that the Court provisionally certify the proposed Class. Provisional class certification is appropriate at the preliminary-approval stage where, as here, the proposed Class has not previously been certified, and the Plaintiffs have created a substantial record supporting the propriety of class certification. *See Newberg*, § 11.22. The practical purpose of provisional class certification is to facilitate the dissemination of Notice to the Class of the terms of the proposed settlement and the date and time of the final approval hearing. *See id.* § 11.27.

**B. The Proposed Settlement Negotiated By The Parties Enjoys A Presumption Of Fairness.**

A proposed settlement enjoys a presumption of fairness if the Court finds that "the settlement has been arrived at after arm's length negotiations . . . [t]here has been sufficient discovery taken to enable counsel and the court to act intelligently . . . [p]roponents of the settlement are counsel experienced in similar litigation . . . [and] the number of objectors or the interest they represent is not large*." Boggess v. Hogan,* 410 F. Supp. 433, 438 (N.D. Ill. 1975); *Goldsmith v. Technology Solutions Co*., No. 92 C 4374, 1995 WL 17009594, at n. 2 (N.D. Ill.

Oct. 10, 1995) citing *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 321 (N.D. Ill. 1979); *Krasner v. Dreyfus Corp.*, 90 F.R.D. 665, 667 (S.D.N.Y. 1981).

Here, the settlement is presumed fair and falls within the range of possible approval. The settlement was reached exclusively through arm-length negotiations, including two settlement conferences on July 10, 2012 and on August 10, 2012, in Chicago, Illinois, before the Honorable Maria Valdez. Attorneys for Plaintiffs and attorneys for Verizon Wireless were present during these settlement negotiations. The parties extensively discussed the merits of the claims, defenses, and the relief available to the Class. Prior to mediation, the parties exchanged extensive discovery informally and engaged in extensive discussions, informal arguments on the merits, and both expert and legal analyses of all claims at issue and the relative merits and overlap between the claims and the two outstanding cases. After reaching a settlement in principle, the parties turned their attention to negotiating the relevant details and documenting the settlement, which have resulted in tangible benefits for the Class, such as a favorable release of claims, favorable terms for settlement administration, and verification of payroll data to be used to calculate settlement payments.

In negotiating the settlement, Plaintiffs had the benefit of attorneys who are highly experienced in complex litigation and familiar with the legal and factual issues of the case. *See* (Ex. 4). In Plaintiffs' counsel's view, the settlement provides substantial benefits to the Class, especially when considering, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. On preliminary evaluation, the settlement here is presumptively fair and worthy of preliminary approval.

### C. **The Settlement Benefits Fall Within The Range Of Possible Recovery.**

When determining whether a settlement is fair, reasonable, and adequate, the court should consider "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Isby*, 75 F.3d at 1199 (internal citation omitted). The preliminary approval determination is not an ultimate determination of whether the settlement is fair, reasonable and adequate, however. Rather, the court must determine "whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce,* 690 F.2d 616, 621 n. 3 (7th Cir. 1982). This necessarily involves a preliminary determination of the settlement's fairness, reasonableness and adequacy. *See Manual for Complex Litigation* (Fourth) § 21.632 (2012). If the court finds the settlement "within the range of possible approval," it should then order that the Class be notified of the settlement and of a formal fairness hearing to be held on the question of settlement approval. *See id.* at § 40.42 (model preliminary approval order).

Here, the settlement provides the Class with substantial relief, without the delay and expenses of trial and post-trial proceedings. The Class is "similarly situated," under Section 216(b) of the FLSA because: (1) the Plaintiffs and similarly situated employees were subject to common conduct relating to payment, (2) the Plaintiffs and similarly situated employees were subject to common conduct relating to Verizon Wireless' calculation and timing of overtime adjustment payments, and (3) Plaintiffs and similarly situated employees all worked for Verizon Wireless at retail sales locations.

The Stipulation is also fair in that it permits ready access to the Settlement Fund for Class Members. (Ex. 1 ¶ 20).

If the parties did not agree to settle this case, a trial would be lengthy and expensive. The Class would face the risk of a successful argument by Verizon Wireless regarding the dissimilarity of various state law claims asserted by Plaintiffs, which would mandate individual lawsuits by Class members hoping to collect minimal amounts of damages accrued. Even if the Class obtained a judgment in their favor, an appeal would inevitably follow. In light of these risks, the proposed settlement is a fair, reasonable and adequate compromise of the issues in dispute that provides meaningful relief to the Class.

## IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

### A.  The Proposed Settlement Class Meets The Requirements Of Rule 23(a) and 23(b)(3).

Before granting preliminary approval of a settlement, the Court should determine that the proposed Settlement Class is a proper class for settlement purposes. *See Amchem Prods. v. Windsor* 521 U.S. 591, 620-21 (1997); *Manual* (4th), § 21.632. The threshold task is to determine whether the proposed Settlement Class satisfies Rule 23's requirements, applicable to all class actions. The requirements are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a); *Barragan v. Evanger's Dog & Cat Food Co., Inc.*, 259 F.R.D. 330, 332 (N.D. Ill. 2009); *Hernandez v. Gatto Indus. Platers*, No. 08 CV 2622, 2009 WL 1173327, at *1 (N.D. Ill. April 28, 2009).

Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3). In certifying a Settlement Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be

no trial." *Amchem*, 521 U.S. at 620; s*ee also* Fed. R. Civ. P. 23(b)(3)(D). Here, the proposed Settlement Class meets all of the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

"In order to prove numerosity, Plaintiff[s] must establish that the class is so large that 'joinder of all members is impractical.'" *Herkert v. MRC Receivables Corp*., 254 F.R.D. 344, 348 (N.D. Ill. 2008) (internal citations omitted). With over 50,000 members in the Class, individual joinder is impracticable and the numerosity requirement is clearly satisfied.

The proposed Settlement Class also meets the commonality requirement of Rule 23(a). In *Wesley v. Gen. Motors Acceptance Corp.*, 91 C 3368, 1992 WL 57948 at *3 (N.D. Ill. Mar. 20, 1992), the court described this requirement as a "hurdle easily surmounted." *See also Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992) (citing *Wesley*, 1992 WL 57948 at *3). The requirement is met if "there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is also easy, since Plaintiffs and Class Members all were subject to the same wage payment practices employed by Verizon Wireless on a nationwide basis. *See, e.g., Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009) (finding commonality where class members' claims arose out of defendant's failure to pay overtime or comply with relevant state and federal wage laws).

Plaintiffs also meet the typicality and adequacy requirements. Like all other Class Members, Plaintiffs were employed at a Verizon Wireless retail sales location in the United States during the relevant time period. Named Plaintiffs Jeremy Cioe and Sarom Ped adequately represent the Class and Subclass, respectively, since they have no individual interests or claims that are antagonistic to the Class or Subclass and also have participated in case development and in the settlement conference process before the Court. Fed. R. Civ. P. 23(a)(4); s*ee also Sosna v.*

*Iowa*, 419 U.S. 393, 403 (1975) ("[W]here it is unlikely that segments of the class [class representative] represents would have interests conflicting with those she has sought to advance, and where the interests of that class have been competently urged at each level of the proceeding, we believe that the test of Rule 23(a) is met.") (citations omitted)*; Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977) ("Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class."). Plaintiffs have also retained counsel with extensive experience in prosecuting Class actions and complex cases. (Ex. 4). *See Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 837 (N.D. Ill. 2008) ("[E]xperience of class counsel in similar cases weighs in favor of finding that class counsel is competent and qualified…") (citations omitted). Accordingly, the typicality and adequacy requirements are met.

Finally, the proposed Settlement Class meets the requirements of Rule 23(b)(3). To be certified under Rule 23(b)(3), Plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Parish v. Sheriff of Cook County*, 2008 WL 4812875, at * 2 (N.D. Ill. 2008) (quoting Fed. R. Civ. Pr. 23(b)(3)). There are questions of law and fact common to the Class that predominate over any individual questions, specifically Verizon Wireless' pay practices regarding overtime and "true-up" compensation and deductions, which were centralized and uniform. This common issue predominates over individual issues presented in the case, and a class action is the superior means of adjudicating the state claims.

A class action is also superior to other methods available for the fair and efficient adjudication of this controversy. Members of the Class are not likely to and do not have an interest in prosecuting or controlling an individual case against Verizon Wireless, a large and sophisticated company with an abundance of resources. Additionally, concerns of efficiency and economy tip the scales in favor of litigating the issues in one suit before this Court.

### B. Class Certification Is Appropriate for Settlement Purposes.

It is appropriate to settle the claims of all Class members in one action. First, Class Members' FLSA claims are all subject to the terms of a federal statute. Second, Class Members' state law claims are all subject to treatment under analogous statutes. The court "need not inquire" whether applying the statutes of every state would "present intractable management problems, for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); s*ee also In re Warfarin Sodium Antitrust Litig.*, 391 F. 3d 516, 529 (3d Cir. 2004) ("[W]hen dealing with variations in state laws, the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class.").

## V. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

### A. Notice By First Class Mail is Sufficient When A Large, Nationwide Class is Present.

Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all Class Members who would be bound by a proposed settlement, voluntary dismissal, or compromise, regardless of whether the Class was certified under Rule 23(b)(1), (b)(2), or (b)(3). *See Manual for Complex Litigation* (Fourth) §§ 21.632-.633 (2012). In order to protect the rights of absent

Class Members, the Court must provide the best notice practicable to Class Members. *See Phillips v. Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

Notice by first-class mail is practical when the names and addresses of most of the Class Members are known. *See Manual* (4th), §21.311. Neither Rule 23 nor due process requires receipt of actual notice by all Class Members; rather, notice should be mailed to the last known addresses of those who can be identified. *Id.*; *see also Mangone v. First USA Bank*, 206 F.R.D. 222, 231-32 (S.D. Ill. 2001) (Reagan, J.) (approving mailed notice to last known addresses of a Settlement Class with nearly 18.5 million members).

i.      The Parties Propose Notice by First Class Mail

Because the identities of the individual Settlement Class members are known by Defendants, the parties propose Notice through first-class mail. A Proposed Notice and Claim and Opt-In Form are attached to the Stipulation as Ex. 2 and 3, respectively.

ii.     Notice Will Also Be Available Online

Because the members of the Settlement Class are, by nature of their work for the Defendants and resulting requirements, well versed in online technology and access to the Internet, the parties will augment Notice by first-class mail with online provision of the Notice. To that end a settlement website will be set up and the Notice, along with other relevant documents, will be available on the website. The website will also provide Class Members the ability to complete and submit Claim and Opt-In Forms online or by email, as well as by fax or regular mail.

Online provision of the Notice is a convenient option for reaching Class Members who have worked in the telecommunications field. It is cost-effective and uniquely likely to reach the Class of tech-savvy individuals. Under the circumstances of the present case, this Notice,

22

provided by first-class mail and available online, is consistent with applicable law and avoids unnecessary expense that would otherwise diminish the amount of the money available to Class Members. Therefore, the Court should find that the Class Notice complies with the notice requirements imposed by Rule 23.

      iii.     Skip-Tracing and Live-Operator Telephone Support

As noted above, Verizon Wireless will pay for the costs of administering notice to the Class out-of-pocket and thus the costs of notice will not diminish recovery for the Class. Along with a settlement website and delivery by first-class mail, the claims administrator will also provide re-mailing services, including skip-tracing, for any initially undeliverable mailed notice and will provide a toll-free telephone number with live-operator support to ensure the greatest probability that Class Members will receive Notice and have sufficient opportunity to ask questions about the Notice.

### B. The Proposed Form Of Notice Adequately Informs Class Members Of Their Rights In This Litigation.

In an action proceeding under Rule 23(b)(3), the Notice must inform each Class Member that "the court will exclude anyone from the class if he so requests [by a specified date]; the judgment will include all members who do not request exclusion and any member not requesting exclusion may, if he desires, enter an appearance through counsel." *Johnson v. Robinson*, 296 F. Supp. 1165, 1169 (N.D. Ill. 1967) (citing Fed. R. Civ. P. 23(c)(2)).

Here, the proposed Notice clearly and accurately discloses the information material to a Class Member's decision whether to make a claim, object, exclude themselves from the settlement, or do nothing. (Ex. 2). The proposed Notice provides information on the proposed Settlement Class; the terms and provisions of the stipulation of settlement; the relief the

settlement will provide; the date, time and place of the final approval hearing; and the procedures and deadlines for opting out of the settlement or submitting objections.

The Notice advises Class members that Plaintiffs' attorneys will apply to the Court for enhancement payments to the Named Plaintiffs, including Plaintiffs Jeremy Cioe and Plaintiff Sarom Ped (up to $12,500 each), and an award of fees and expenses in an amount of up to one-third (33 1/3%) of the Settlement Fund ($7,721,000.00). (Ex. 2, at p. 3).

The Notice is accurate and informs Class Members of the material terms of the settlement and their rights pertaining to it. The Court should approve the proposed form of Notice and direct that notice be given to the Class as proposed by the parties.

## VI.    CONCLUSION

For the foregoing reasons, the Court should grant preliminary approval of the proposed settlement and enter the accompanying proposed Order of Preliminary Approval.

Respectfully submitted,

Jeremy Cioe and Sarom Ped, on behalf of themselves and all similarly situated persons

s/ Mark A. Bulgarelli
Mark A. Bulgarelli

Mark Bulgarelli, Esq
Ilan Chorowsky, Esq.
Alex Stepick, Esq.
PROGRESSIVE LAW GROUP LLC
1 North LaSalle Street, Suite 2255
Chicago, Illinois 60602
(312) 787-2717 (voice)

Robin Potter, Esq.
ROBIN POTTER & ASSOCIATES, P.C.
111 East Wacker Street, Suite 2600
Chicago, Illinois 60601
(312) 861-1800 (voice)

24