UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY CIOE and SAROM PED, on behalf of themselves and all similarly situated persons, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | No. 1:11-cv-1002 |
| v. | ) ) | |
| | ) | Honorable Maria Valdez |
| CELLCO PARTNERSHIP, AIRTOUCH CELLULAR, and VERIZON WIRELESS TEXAS, LLC, all d/b/a VERIZON WIRELESS, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) ) | |

---

## PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

---

Respectfully submitted by:

Mark Bulgarelli, Esq
Ilan Chorowsky, Esq.
Alex Stepick, Esq.
PROGRESSIVE LAW GROUP LLC
1 North LaSalle Street, Suite 2255
Chicago, Illinois 60602
(312) 787-2717 (voice)

Robin Potter, Esq.
ROBIN POTTER & ASSOCIATES, P.C.
111 East Wacker Street, Suite 2600
Chicago, Illinois 60601
(312) 861-1800 (voice)

*Counsel for Plaintiffs and the Class*

## <u>TABLE OF CONTENTS</u>

I.      Introduction.............................................................................................................1

II.     Preliminary Approval and Dissemination of Notice. ..................................................1

III.    Background and Summary of Settlement. ...................................................................2

        A.  Allegations .................................................................................................2

        B.  Case Development and Settlement .................................................................2

        C.  The Terms of the Proposed Settlement ...........................................................5

            1.  Class certification..............................................................................5

            2.  Class Counsel and Class Representatives. ............................................6

            3.  Monetary relief available to the Class members.....................................6

            4.  Class Notice. .....................................................................................7

            5.  Enhancement awards and attorneys' fees and costs .................................8

IV.     Class Certification Is Appropriate. ............................................................................8

V.      The Court Should Approve the Settlement................................................................12

        A.  Standard for Judicial Evaluation and Approval ..............................................12

        B.  Factors to be Considered in Determining Whether a Settlement Is Fair,
            Reasonable, and Adequate. ........................................................................13

            1.  Strength on the merits compared to the amount of the settlement...............13

            2.  Defendants' ability to pay .................................................................15

            3.  The likely costs, complexity, and length of further litigation. .....................15

            4.  Opposition and Reaction of the Class ..............................................16

            5.  Absence of collusion.........................................................................18

            6.  Opinion of counsel...........................................................................20

            7.  Stage of proceedings and amount of discovery ...........................................20

            8.  Public interest...................................................................................21

        C.  Approval of the Settlement Under the Fair Labor Standards
            Act is Appropriate.....................................................................................21

VI.     The Notice Supports Final Approval. .....................................................................23

VII.    The Agreed Attorneys' Fees are Appropriate. ........................................................27

VIII.   The Enhancement Awards and Payments to Plaintiffs are Appropriate....................30

IX.     Conclusion. .........................................................................................................32

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Altier v. Worley Catastrophe Response, LLC*, CIV.A. 11-241, 2012 WL 161824
(E.D. La. Jan. 18, 2012) ........................................................................17

*Alvarez v. City of Chicago,* 605 F.3d 445 (7th Cir. 2010)) ...................................22

*Amchem Prods. v. Windsor* 521 U.S. 591 (1997) ...............................8

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,* 07 CV 2898,
2012 WL 651727 (N.D. Ill. Feb. 28, 2012), appeal dismissed,
710 F.3d 754 (7th Cir. 2013) ...............................................................32

*Armstrong v. Board of School Directors*, 616 F.2d 305 (7th Cir. 1980) ...........................13, 21

*Barragan v. Evanger's Dog & Cat Food Co., Inc.*, 259 F.R.D. 330 (N.D. Ill. 2009) .........9

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ...............................27

*Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990 (N.D. Ind. 2010) ................ft. nt. 8, 29

*Butler v. American Cable & Telephone, LLC*, No. 09 CV 5336,
2011 WL 4729789 (N.D. Ill. Oct. 6, 2011) ...................................9, 10, 12

*Carter v. Anderson Merchandisers*, LP, EDCV 08-0025-VAP OPX, 2010 WL 1946784,
(C.D. Cal. May 11, 2010) ...........................................................ft. nt. 8

*Chaffee v. A&P Tea Co*., 79 C 2735, 1991 WL 5859 (N.D. Ill. Jan. 16, 1991) .................23

*Chavez v. Don Stoltzner Mason Contractor, Inc.*, 272 F.R.D. 450 (N.D. Ill. 2011) ...........9

*Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831 (N.D. Ill. 2008) .........................10

*City of Greenville v. Syngenta Crop Prot., Inc*., 904 F. Supp. 2d 902, 909
(S.D. Ill. 2012) ...........................................................................28

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ...............................31, 32

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) .........................................15, 21

*deMunecas v. Bold Food, LLC*, 09 CIV. 00440 DAB, 2010 WL 3322580
(S.D. N.Y. Aug. 23, 2010) ...............................................................22

*E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) ...............................13

*Ervin v. OS Rests. Servs., Inc.*, 632 F.3d 971 (7th Cir. 2011) ................................................ft. nt. 5

*Faican v. Rapid Park Holding Corp.*, 10-CV-1118 (JG), 2010 WL 2679903
(E.D.N.Y. July 1, 2010) ....................................................................................................29

*Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560 (7th Cir. 1994).................................27

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998)...............................................................27, 28

*GE Capital Corp. v. Lease Resolution Corp.*, 128 F. 3d 1074 (7th Cir. 1997) ...................13

*Goldsmith v. Tech. Solutions Co.*, 92 C 4374,
1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ......................................................................27, 28

*Gonzalez v. Plastival, Inc.*, Case No. 05 C 4864 (N.D. Ill. Sept. 23, 2008) .......................29

*Hardaway vs. Employbridge of Dallas, Inc.*, Case No. 11 C 3200
(N.D. Ill. Apr. 4, 2013) .......................................................................................................29

*Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344 (N.D. Ill. 2008) ................................8

*Hispanics United of DuPage Cnty. v. Vill. of Addison, Ill.*,
988 F. Supp. 1130 (N.D. Ill. 1997) .....................................................................................15

*Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165 (1989).................................................22

*Hughes v. Merit Lincoln Park LLC*, 08-CV-6191, 2011 WL 6028535
(N.D. Ill. Dec. 5, 2011) ......................................................................................................24

*In re Dun & Bradstreet Credit Services Customer Litigation,*
130 F.R.D. 366 (S.D. Ohio 1990).......................................................................................32

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
280 F.R.D. 364 (N.D. Ill. 2011) .........................................................................................27, 28

*In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002
(N.D. Ill. 2000) *aff'd sub nom. In re Mexico Money Transfer Litig.*,
267 F.3d 743 (7th Cir. 2001) ..............................................................................................16, 23

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ...............................................................................................16

*In re Rio Hair Naturalizer Products Liab. Litig.*, MDL 1055,
1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ..................................................................17-18, 21

*In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001) .................................................28

*In re Telesphere Int'l Sec. Litig.,* CIV. A. 89 C 1875, 1990 WL 93367
(N.D. Ill. June 21, 1990) ....................................................................................................23

*In re VMS Ltd. P'ship Sec. Litig.*, 90 C 2412, 1995 WL 355722
(N.D. Ill. June 12, 1995) ....................................................................................................23

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) .....................................................................12-13

*Johnson v. Brennan*, 10 CIV. 4712 CM, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) .....22

*Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983) .........................................................23

*Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ...............................28

*McCormick v. Festiva Dev. Grp., LLC*, CIV. 09-365-P-S, 2010 WL 582218
(D. Me. Feb. 11, 2010) ......................................................................................................17

*McMahon v. Olivier Cheng Catering & Events, LLC*, 08 CIV. 8713 (PGG),
2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ....................................................................29

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) .....................................22

*Meyenburg v. Exxon Mobil Corp.*, 3:05-CV-15-DGW, 2006 WL 2191422
(S.D. Ill. July 31, 2006)................................................................................................30, 31

*Muro v. Target Corp.,* 580 F.3d 485 (7th Cir. 2009) ............................................................9

*Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745 (N.D. Ill. 2011) ...................22

*Osorio v. Sprint/United Management Company*, 08 C 3228 (N.D. Ill.) ...............................11

*Parish v. Sheriff of Cook County*, Case No. 07-4369, 2008 WL 4812875
(N.D. Ill. Oct. 24, 2008) ....................................................................................................11

*Peraza v. Dominick's Finer Foods, Inc. of Illinois*, Case No. 05 C 891
(S.D. Ill. March 3, 2008) ...................................................................................................29

*Perry v. National City Bank et al*., No. 05 C 891 (S.D. Ill. March 3, 2008) ........................30

*Phillips v. Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ...................................................23

*Raymer v. Mollenhauer*, 3:10-CV-210-PS, 2011 WL 338825 (N.D. Ind. Jan. 31, 2011) ....21

*Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584 (7th Cir. 1993) ...................9

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP,* 97 C 7694,
2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ......................................................18

*Romo v. Manpower, Inc.,* Case No. 09 C 3429 (N.D. Ill. Nov. 29, 2012)..............................29

*Rosales v. The Placers, Ltd.,* Case No. 09 C 1706 (N.D. Ill. Feb. 7, 2012) .........................29

*Rotuna v. W. Customer Mgmt. Grp., LLC,* 4:09CV1608, 2010 WL 2490989
(N.D. Ohio June 15, 2010)...............................................................................29

*Schmidt v. Smith & Wollensky, LLC,* 268 F.R.D. 323 (N.D. Ill. 2010) ...............................10

*Schmidt v. Smith & Wollensky LLC,* Case No. 09 C 2752 (N.D. Ill Aug. 18, 2011)..............30

*Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181 (N.D. Ill. 1992) .........................9

*Scholes v. Stone, McGuire & Benjamin,* 839 F. Supp. 1314 (N.D. Ill. 1993) .....................18

*Sosna v. Iowa,* 419 U.S. 393 (1975) ......................................................................10

*Spicer v. Chicago Bd. Options Exch., Inc.,* 844 F. Supp. 1226 (N.D. Ill. 1993) .................27

*Sunrise Toyota, Ltd. v. Toyota Motor Co. Ltd.,* 1973 WL 778 (S.D.N.Y. 1973) ...............18

*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646
(7th Cir. 2006) ....................................................................................12, 13

*Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.,* 02-CV-1109-DRH,
2004 WL 768658 (S.D. Ill. Mar. 19, 2004) ............................................................29

*Tylka v. Gerber Products Co.,* 182 F.R.D. 573 (N.D. Ill. 1998) .........................................23

*Uhl v. Thoroughbred Tech. & Telecommunications, Inc.,* 309 F.3d 978
(7th Cir. 2002) ....................................................................................12

*Wesley v. Gen. Motors Acceptance Corp.,* 91 C 3368, 1992 WL 57948
(N.D. Ill. Mar. 20, 1992) ................................................................................9

*Will v. Gen. Dynamics Corp.,* CIV. 06-698-GPM, 2010 WL 4818174
(S.D. Ill. Nov. 22, 2010)...............................................................................28

*Williams v. Rohm & Haas Pension Plan,* 4:04-CV-0078-SEB-WGH,
2010 WL 4723725 (S.D. Ind. Nov. 12, 2010) .........................................................31

*Williams v. Volt Management Corp,* Case No. 10 C 3927 (N.D. Ill. Oct. 13, 2011) ............31

**STATUTES**

29 U.S.C. § 201 *et seq.* ........................................................................................................2

29 U.S.C. § 216(b) ...........................................................................................................5, 8

**RULES**

Fed. R. Civ. P. 23(a) ...................................................................................5, 8, 9, 10, 12

Fed. R. Civ. P. 23(b) .........................................................................................................8, 11

Red. R. Civ. P. 23(c) ...........................................................................................................24

**SECONDARY SOURCES**

*Manual for Complex Litigation* (Fourth) § 21.632 (2012) ............................................8, 23, 24

*2 Newberg on Class Actions 3d* (1992) § 11.58 ...............................................................28

7B Charles Alan Wright et al., FEDERAL PRACTICE
AND PROCEDURE § 1797.6 (3d ed. 2005) ......................................................................23

## **TABLE OF EXHIBITS**

**Ex. A**: [Proposed] Order of Final Settlement Approval and Dismissal with Prejudice

**Group Ex. B**: Declaration of Kristin Dahl With Respect To Notice and Claims Administration Activities Completed As Of October 18, 2013

**Ex. C**: Declaration of Mark A. Bulgarelli in Support of Final Approval of Class Action Settlement

**Group Ex. D**: Class Counsel Resumes

**Ex. E**: Objection in *Doherty v. Hertz Corporation et al*., 10-cv-00359 (D.N.J.)

**Ex. F:** Minute Entry Granting Final Approval in *Doherty v. Hertz Corporation et al*., 10-cv-00359 (D.N.J.)

**Group Ex. G:** *Romo v. Manpower, Inc.,* Case No. 09 C 3429 (N.D. Ill. Nov. 29, 2012); *Hardaway vs. Employbridge of Dallas, Inc.*, Case No. 11 C 3200 (N.D. Ill. Apr. 4, 2013); *Peraza v. Dominick's Finer Foods, LLC,* Case No. 11 C 8390 (N.D. Ill. Mar. 18, 2013); *Rosales v. The Placers, Ltd.,* Case No. 09 C 1706 (N.D. Ill. Feb. 7, 2012); *Gonzalez  v. Plastival, Inc.*, Case No. 05 C 04864 (N.D. Ill. Sept. 23, 2008); *Perry v. National City Bank et al.*, Case No. 05 C 891 (S.D. Ill. March 3, 2008); *Williams v. Volt Management Corp*, Case No. 10 C 3927 (N.D. Ill. Oct. 13, 2011); *Schmidt v. Smith & Wollensky LLC*, Case No. 09 C 2752 (N.D. Ill Aug. 18, 2011).

## I.      Introduction

Plaintiffs Jeremy Cioe and Sarom Ped ("Class Representatives" or "Plaintiffs"), individually and on behalf of similarly situated Settlement Class members defined below, request that the Court enter an order finally approving the Parties' Agreement and Stipulation of Settlement and Release (the "Settlement" or the "Agreement") (Doc. #133-1) between Plaintiffs Jeremy Cioe and Sarom Ped, and Defendants Cellco Partnership, Verizon Wireless Texas, LLC, and AirTouch Cellular all d/b/a Verizon Wireless (collectively, "Defendants" or "Verizon Wireless"), and finally approving the form of Notice and its method of dissemination to Settlement Class members.  The Parties' [Proposed] Order of Final Settlement Approval and Dismissal with Prejudice ("Order") is submitted herewith as Exhibit A and will be submitted to the Court in electronic format.

Participation by the Class in the settlement has been very positive.  Approximately 21,816 Class members have submitted Claim and Opt-In Forms, and only one member of the Class has objected to the settlement.  Only fifteen Class members exercised the right to "opt-out" and exclude themselves from the settlement.  The actions of the Class members reinforce the Court's preliminary conclusion that the settlement is fair, reasonable and adequate.  As a result, Plaintiffs respectfully submit that the Settlement should be finally approved.

## II.     <u>Preliminary Approval and Dissemination of Notice.</u>

On May 1, 2013, the Court held a hearing to consider Plaintiffs' Motion for Preliminary Approval of Class Action and Notice to the Settlement Class.  After consideration of the Settlement Agreement and notice plan, the Court entered an order of preliminary approval. (Doc. #139).  In accordance with the May 1, 2013 order preliminarily approving the settlement and pursuant to the Court's directive made in open court at the July 25, 2013 status hearing, directing that notice be sent out by August 1, 2013, the Parties caused Dahl Administration,

LLC, the Settlement Administrator, to distribute the Court approved Notice to Class members by first class mail on August 1, 2013. *See* Declaration Of Kristin Dahl With Respect To Notice And Claims Administration Activities Completed As Of October 18, 2013, attached hereto as Group Exhibit B ¶ 14 ("Dahl Decl.").

The Notice was sent via U.S. mail to 55,046 people. Ex. B, Dahl Decl. ¶ 14. The Notice informed Class members that opt-out requests were due on September 30, 2013 and that any objection to the Settlement was due on September 30, 2013. Only fifteen Class members (less than three hundredths of one percent (0.0272%) of the Class) requested exclusion; and only one Class member (less than 0.002%) objected to the Settlement. Ex. B, Dahl Decl. ¶¶ 31-32.

## III.    Background and Summary of Settlement.

### A.    Allegations

Plaintiffs' Consolidated Class Action Complaint (Doc. #116) alleges claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA") and state overtime laws, individually and on behalf of Verizon Wireless workers at retail sales locations nationwide, for improper and untimely calculation and payment of overtime adjustments to the regular rate of pay based upon commission, bonus or other incentive compensation; overtime compensation for workers classified as "Salary Plus" who were paid overtime at a half-time rate (purportedly, on a "fluctuating workweek" basis); overtime compensation for deductions of overtime recorded or submitted by Class Members; and penalties, liquidated damages, and attorneys' fees and costs. Verizon Wireless has denied these allegations.

### B.    Case Development and Settlement

On or about February 11, 2011, Plaintiff Jeremy Cioe filed a proposed Class Action Complaint. On or about March 16, 2011, Plaintiff Sarom Ped filed a proposed Class Action

Complaint, as amended on May 11, 2011. In combination, the Complaints sought, *inter alia,* relief relating to payment of overtime adjustments attributable to bonuses, commissions, and other incentive compensation, retroactive employer deductions, and underpayment for overtime under Verizon's "Salary Plus" payment model, as alleged under the FLSA and state law.

On or about July 2, 2012, Plaintiffs filed a Motion to Relate and Reassign Cases, requesting that the *Ped* action be related to the *Cioe* action and reassigned to the Honorable Sharon J. Coleman, before whom *Cioe* was pending. (Doc. #83). While that motion was pending the Parties filed, on January 23, 2013, a Joint Motion to Consolidate Cases and for Leave to File an Amended Consolidated Complaint. (Doc. #104). On January 29, 2013, the Court entered an order consolidating the *Ped* and *Cioe* actions and granting leave to file a consolidated complaint.[12] (Doc. #106). Subsequently, on or about March 19, 2013, Plaintiffs filed a Consolidated Class Action Complaint, asserting claims under the FLSA and state overtime law, as described more fully above (Doc. #116), and on April 8, 2013 the consolidated proceeding was reassigned to the Honorable Maria Valdez. (Doc. #129).

The Parties engaged in a lengthy discovery process, including extensive exchange of documents, data, and informal discovery over a period of more than 15 months. To advance the litigation, Plaintiffs undertook significant effort in conducting extensive legal research, and developing legal and factual arguments, that derived tactical advantage and which would dually serve the purposes of contested litigation and class certification, and settlement. To develop proofs for their claims and for damages purposes, Class Counsel undertook in-depth analysis of Verizon Wireless policies, practices and procedures, and worked in tandem with retained experts

---

[1] On April 8, 2013, the Court entered an order amending the January 29, 2013 order to reflect that the *Ped* and *Cioe* matters were consolidated for all purposes. (Doc. #123).
[2] On February 4, 2012 the Court found the previously filed Motion to Relate and Reassign Cases moot due to consolidation of the actions.

in the fields of statistics and data computation to demonstrate liability, model and valuate damages, and to analyze the entirely of Defendants' payroll records, which totaled approximately fifty-two million (52,000,000) lines of unique payroll data. Such advocacy culminated in the ability to reach a favorable Settlement of each claim.

After two rounds of formal settlement conferences before the Honorable Maria Valdez, on July 10 and August 10, 2012, including additional exchange of documents and extensive and continued analysis regarding claims and defenses between the first and second settlement conferences, the Parties reached a settlement in principle. Following the second formal settlement conference, which lasted in excess of eight hours and went late into the evening, Defendants continued their rolling production of documents and data, to enable the Parties to negotiate additional disputed terms, and thereafter for confirmatory purposes. After roughly five months of continued arm's-length negotiations by correspondence, phone and in-person, a final settlement of all the claims in both the *Cioe* and *Ped* matters was reached.

Plaintiffs and their attorneys believe the settlement outcome is fair, reasonable and adequate. Class members have responded very favorably to the settlement. While only 15 out of more than 55,000 Class members excluded themselves from the Settlement 39.6 percent of the Class as a whole submitted a valid claim, and 48 percent of Subclass members submitted a claim. Ex. B, "Dahl Decl." ¶ 27. This represents an "exceptionally high filing rate," according to the Settlement administrator and in the experience of Class Counsel. *Id.* The average per claimant payment will be more than $234. Ex. B, "Dahl Decl." ¶ 28.

///

**C.  The Terms of the Proposed Settlement**

The key terms of the Settlement are as follows:

      1.    <u>Class certification</u>.

The Parties stipulated to certification of a class/collective (including a subclass/sub-collective) for settlement purposes pursuant to Fed. R. Civ. P. 23(a) and (b)(3), and 29 U.S.C. § 216(b).  The "Class" (or "Settlement Class") is comprised of all persons employed in a Verizon Wireless retail sales location in the United States (i.e., a store, kiosk, or in-store location) who were classified and paid overtime as a nonexempt or Salary Plus employee at any time from March 16, 2008 to and including February 15, 2013.  The "Subclass" (or "Settlement Subclass") is comprised of all persons employed in a Verizon Wireless retail sales location in the United States (i.e., a store, kiosk, or in-store location) who were classified and paid overtime as a Salary Plus employee at any time from March 16, 2008 to and including February 15, 2013.[3]

The following are excluded:

- Claims, judgments or settlements for work performed at call center locations serving Verizon Wireless customers or customers of any Released Party or where Verizon Wireless sales or service has been provided primarily via telephone, internet or other virtual means rather than in person.

- Claims, judgments or settlements for work performed for resellers of Verizon Wireless products or services.

- Any claim, judgment or settlement in the lawsuit, *Atzimba Cisneros v. Cellco Partnership,* Case No. JCCP 4693, pending in the California Superior Court for Los Angeles County, on behalf of class members in California, except such claims,

---

[3] Reference to the "Class" and "Class members" includes the Subclass and Subclass members.

judgments, or settlements concerning the calculation or untimely or insufficient payment of paid overtime adjustments to the regular rate of pay based upon commission, bonus or other incentive compensation, and retroactive deductions of overtime recorded by Class Members as worked.

- Persons who were members of a previous settlement class concerning claims of unpaid compensation in the lawsuit *Garnica v. Cellco Partnership et al.*, Case No 08-476827, resolved in the California Superior Court for San Francisco County, and who worked at one or more Verizon Wireless retail locations and time periods that are covered entirely by the *Garnica* settlement. Class and Subclass members whose periods of employment concerning allegedly unpaid compensation are released partially by *Garnica* will only be included in this Settlement to the extent they worked at a Verizon Wireless retail sales location during a period not covered by the *Garnica* settlement. In such a case, an individual's recovery of benefits under this settlement will be pro-rated by excluding the amount of time worked at a Verizon Wireless retail location that is released by the *Garnica* settlement.

- Current and former officers of each of the Defendants, Defendants' counsel, Plaintiffs' counsel, and any member of the judiciary presiding over this action.

       2.    <u>Class Counsel and Class Representatives</u>.

The Court appointed Jeremy Cioe and Sarom Ped as Class Representatives, and appointed Progressive Law Group, LLC including Ilan Chorowsky, Mark Bulgarelli and Alex Stepick, and Robin Potter & Associates, including Robin Potter, as Class Counsel in this action.

       3.    <u>Monetary relief available to the Class members</u>.

Verizon Wireless created a fund in the amount of Seven Million Seven Hundred and Twenty-One Thousand Dollars ($7,721,000.00), which, together with any accrued interest

thereon, constitutes the "Settlement Fund." The Settlement Fund will cover all payment obligations of Verizon Wireless under this settlement, except usual and customary payroll taxes and claims administration costs, including all Class member payments and all of Plaintiffs' attorneys' fees and expenses. Class Counsel successfully negotiated payment by Verizon Wireless of 100 percent of the costs of notice and settlement administration, so that no monies from the Settlement Fund will be allocated for these costs,[4] representing a net benefit to the Class of more than $241,455 above and beyond the amount earmarked for the Settlement Fund. Ex. B, Dahl Decl. ¶¶ 33-34. Thus, the Settlement Administrator calculates that the Settlement will result, on average, in a claim distribution of more than $234 per Class member and $666 per Subclass member. Ex. B, Dahl Decl. ¶ 28.

> 4. <u>Class Notice</u>.

The Court approved Notice has been provided to Class members by first-class mail, in accordance with the Court approved Notice plan. The Settlement Administrator, Dahl Administration, LLC, mailed the Class Notice to the Class members by first-class mail at their last known or updated addresses, ascertained using Defendants' business records and by checking the national change of address database. Furthermore, as described more fully below, the Settlement Administrator performed follow up skip tracing, as set forth in the Settlement Agreement, to find additional mailing addresses when necessary. Ex. B, "Dahl Decl." ¶16.

Additionally, the Settlement Administrator, in consultation with Class Counsel, established a phone hotline for Class members to make inquiries and obtain information about the settlement, and created a website with the Notice documents and other relevant information

---

[4] *See* Settlement Agreement, Doc. #133-1 ¶ 10(c)(vi).

for use by Class members.  Ex. B, Dahl Decl. ¶¶ 22-23.  As a result, the Notice plan approved by the Court has been successfully completed.

        5.      <u>Enhancement awards and attorneys' fees and costs</u>.

Verizon Wireless has agreed to pay enhancement awards to the Class Representatives from the Settlement Fund. Verizon Wireless agreed to pay up to $12,500.00 to each lead Plaintiffs for their efforts on behalf of the other Class members and in consideration of a full release of claims.  *See* Settlement Agreement, Doc. #133-1 ¶¶ 10(c)(v), 17.

Furthermore, Verizon Wireless has agreed to pay Class Counsel up to Thirty Three and One Third Percent (33 1/3%) of the Settlement Fund for their attorneys' fees and litigation costs, subject to Court approval.  *See* Settlement Agreement, Doc. #133-1 ¶ 10(c)(iv).

## IV.    **Class Certification Is Appropriate.**

The Settlement Class and Subclass meet the requirements of Rule 23.  A Court may certify a class for settlement purposes only if the requirements of Rules 23(a) and (b) of the Federal Rules of Civil Procedure are met.  *See Amchem Prods. v. Windsor* 521 U.S. 591, 620-21 (1997); *Manual for Complex Litigation* (Fourth) § 21.632 (2012).  On May 1, 2013, the Court preliminarily certified the Settlement Class and the Settlement Subclass under Fed. R. Civ. P. 23(b)(3) and 29 U.S.C. § 216(b) for the purposes of settlement.  (Doc. #139).  The Court should now finally certify the Settlement Class and Subclass as all of the requirements of Fed. R. Civ. P. 23 have been met.

Plaintiffs meet the numerosity requirement of Rule 23(a)(1), because it is well established "…that the class is so large that 'joinder of all members is impractical.'" *Herkert v. MRC Receivables Corp*., 254 F.R.D. 344, 348 (N.D. Ill. 2008) (internal citations omitted) (citing Fed. R. Civ. P. 23(a)(1)).  The Class and Subclass in this proceeding totaled 55,041 and 8,218 Class

and Subclass members respectfully, and 21,816 Class members and 3,945 Subclass members submitted valid claims. Ex. B, Dahl Decl. ¶¶ 12, 27.

Plaintiffs meet the commonality requirement of Rule 23(a)(2), a "hurdle [that] is easily surmounted." *Wesley v. Gen. Motors Acceptance Corp.*, 91 C 3368, 1992 WL 57948, *3 (N.D. Ill. Mar. 20, 1992) ("…there is no need for every class member's factual or legal situation to be a carbon copy of the situation that confronts the individual name plaintiff or plaintiffs. Instead the existence of one or more common issues of law or fact (or both) will suffice for this part of the test."); *see Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). Commonality is clear here, since Plaintiffs and Class members were all subject to the same wage payment practices employed by Verizon Wireless on a nationwide basis which led to Verizon Wireless' failure to properly pay overtime. *See* Declaration of Mark A. Bulgarelli in Support of Final Approval of Class Action Settlement attached hereto as Exhibit C ¶¶ 5-9 ("Bulgarelli Decl."); *see also Chavez v. Don Stoltzner Mason Contractor, Inc.*, 272 F.R.D. 450, 454 (N.D. Ill. 2011) (a common wage payment practice satisfies the standard); *Barragan v. Evanger's Dog & Cat Food Co., Inc.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009) (finding commonality where class members' claims arose out of defendant's failure to pay overtime).

Plaintiffs meet the typicality requirement of Rule 23(a)(3). The test for determining whether the typicality requirement is met is "whether the named representatives' claims have the same essential characteristics as the claims at large." *Butler v. American Cable & Telephone, LLC*, No. 09 CV 5336, 2011 WL 4729789, *6 (N.D. Ill. Oct. 6, 2011) (citing *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 597 (7th Cir.1993)). Factual differences between the named plaintiffs' claims and the claims of the other Class members do not inhibit typicality. *Id.* (citing *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009)). Here, like all other Class

members, Plaintiffs were employed at a Verizon Wireless retail sales location in the United States during the relevant time period. Also, like all other Class members, Plaintiffs were subjected to Verizon Wireless' practices of underpaying its employees, which resulted from a uniform companywide payment practice. Ex. C, Bulgarelli Decl. ¶¶ 8, 29.

Plaintiffs meet the adequacy requirement of Rule 23(a)(4). To determine whether Plaintiffs meet this requirement, a court examines whether plaintiffs "(1) have antagonistic or conflicting claims with other members of the class; (2) have a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) have counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Butler*, 2011 WL 4729789, *6 (citing *Schmidt v. Smith & Wollensky, LLC,* 268 F.R.D. 323, 328 (N.D. Ill. 2010)). Named Plaintiffs Jeremy Cioe and Sarom Ped have adequately represented the Class (Cioe and Ped) and Subclass (Ped), respectively, since they have no individual interests or claims that are antagonistic to the Class, have sufficient interest in the outcome of the case, and have vigorously advocated for the Class while participating in case development and in the settlement conference process before the Court, and in case development and investigation. *See* Ex. C, Bulgarelli Decl. ¶¶ 27-29; s*ee also Sosna v. Iowa*, 419 U.S. 393, 403 (1975) ("[W]here it is unlikely that segments of the class [that class representatives] represent[] would have interests conflicting with those she has sought to advance, and where the interests of that class have been competently urged at each level of the proceeding, we believe that the test of Rule 23(a) is met.").

Plaintiffs have also retained counsel with extensive experience in prosecuting class actions and similar, complex cases. *See* Class Counsel Resumes attached hereto as Group Exhibit D*;* Ex. C, Bulgarelli Decl. ¶¶ 3, 39, 40; *see also Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 837 (N.D. Ill. 2008) ("…[E]xperience of class counsel in similar cases weighs

10

in favor of finding that class counsel is competent and qualified.").  In fact, not only are Class Counsel experienced in prosecuting class action and similar complex cases, they have previously prosecuted similar wage and hour class litigation on behalf of workers in the very same industry, thereby leading to efficiencies in discovery, damage and liability analysis, and settlement. *See Osorio v. Sprint/United Management Company*, 08 C 3228 (N.D. Ill.).

Plaintiffs also meet the requirements of Rule 23(b)(3).  Under Rule 23(b)(3), Plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Parish v. Sheriff of Cook Cnty.*, 07 4369, 2008 WL 4812875, *2 (N.D. Ill. Oct. 24, 2008) (quoting Fed. R. Civ. P. 23(b)(3)).

Here, common questions of law *and* fact predominate over any individual questions as Verizon Wireless' pay practices were centralized and uniform.  Ex. C, Bulgarelli Decl. ¶¶ 5-9. Plaintiffs have verified, moreover, that Defendants' payroll practices affected the Class as a whole, and their policies and procedures regarding deductions, the manner and timing of calculating and paying overtime adjustments, and manner of payment of overtime to Salary Plus employees, occurred on a Class and Subclass-wide basis. *Id.*  The exceptionally high claims rate (21,816), compared to the extremely low opt-out response (15), support that pay practices suffered by Plaintiffs were not only shared by Class members, but predominated.

A class action is also the superior means to fairly and efficiently adjudicate the controversy.[5]  Members of the Class are not likely to and do not have an interest in prosecuting

---

[5] The Seventh Circuit has made clear that the presence of FLSA claims that parallel state law claims does not bar a finding of superiority in a Rule 23 analysis. *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 977-78 (7th Cir. 2011) ("Nothing we find suggests that the FLSA is not amenable to state-law claims for related

11

or controlling an individual case against Verizon Wireless, a large and sophisticated company with an abundance of litigation resources. "[I]ndividual employees may face an uphill battle if they attempt to recover what may be a relatively small amount of damages on an individual basis, as the cost of litigation would likely outweigh the benefit." *Butler*, 2011 WL 4729789, *7. To be sure, employees are also often reluctant to start their own lawsuit against their employer, which makes the proposed class mechanism – whereby the class notice advises class members that Verizon Wireless has promised not to retaliate against them for filing a claim – the preferable solution. The absence of any known individual lawsuits regarding the same claims, and the extremely low opt-out rate, confirms the unlikelihood of individual cases or remedies and the superiority of a class action here. Finally, disposing of the claims in a single proceeding is vastly preferential for purposes of judicial economy.

As Plaintiffs meet all requirements under Fed. R. Civ. P. 23(a) and (b)(3), the Court should now grant final certification of the Settlement Class and the Settlement Subclass.

## V.   **The Court Should Approve the Settlement.**

### A.   **Standard for Judicial Evaluation and Approval.**

A court should approve a settlement if the settlement "is fair, reasonable, and adequate." *Synfuel Technologies, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 652 (7th Cir. 2006) (quoting Fed. R. Civ. P. 23(e)(1)(C)); *see Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v.*

---

relief in the same federal proceeding [. . . .] Some may be part of both the FLSA group and the Rule 23 class; some may be in one but not the other. We conclude that there is nothing in the FLSA that forecloses these possibilities.").

*Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

**B.      Factors to be Considered in Determining Whether a Settlement is Fair, Reasonable, and Adequate.**

The factors considered are: (1) the strength of the plaintiffs' case on the merits compared to the amount of the settlement; (2) the defendant's ability to pay; (3) the likely complexity, length and expense of further litigation; (4) the amount of opposition to the settlement from members of the class; (5) evidence of collusion; (6) the opinion of competent counsel; (7) the stage of the proceedings and the amount of discovery completed at the time of settlement; and (8) the public interest.  *Isby,* 75 F. 3d at 1197-1200; *GE Capital Corp. v. Lease Resolution Corp*., 128 F. 3d 1074, 1082 (7th Cir. 1997); *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980) (overruled on other grounds).  Here, these factors show that the settlement should be approved.

1.      <u>Strength on the merits compared to the amount of the settlement.</u>

Generally, the most important factor in determining whether a settlement should be approved is the comparison of the strength of plaintiffs' case compared against the terms of the Settlement.  *E.E.O.C. v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 889 (7th Cir. 1985); *see also Synfuel Technologies, Inc.,* 463 F.3d at 653.

Plaintiffs allege *inter alia* that Defendants improperly and untimely calculated and paid overtime adjustments to the regular rate of pay based upon commission, bonus or other incentive compensation; under-paid overtime compensation for workers classified as Salary Plus who were paid overtime at a half-time rate; and, failed to pay overtime compensation for deductions of overtime recorded or submitted by Class members.  Through the litigation process and diligent representation of the Class, Plaintiff's counsel attempted to substantiate this alleged misconduct.

For its part, Verizon Wireless denied Plaintiffs' claims. Verizon Wireless would argue that the payment procedures Plaintiffs' complain of comply with the FLSA and relevant state law. Additionally, Verizon Wireless has taken the position that, due to its standardized manner of calculating overtime, it *overpaid* Class members and thus has no liability on grounds that it is entitled to a set off against any potential underpayments.[6] Ex. C, Bulgarelli Decl. ¶¶ 8, 19. Verizon Wireless may argue at trial that its standard procedures show that employees agreed to the deductions at issue; that the rate of overtime payment to Subclass members is permissible under the fluctuating workweek rule; and that a previous government audit of its wage payment practices eliminates or reduces its liability. *See e.g., id.*

The negotiated Settlement nonetheless provides money payment to every Class member who submitted a claim and opt-in form (the average payment will be more than $234 and some Class members will receive significantly more), and Verizon Wireless agreed to, and did in fact, supply information sufficient to identify the Class members and calculate their settlement payment. The Settlement distribution formula rewards Class members in proportion to the number of overtime hours paid (differentiated by whether those overtime hours were paid under the Salary Plus program or not) and the amount of monthly and annual overtime true-ups paid, so that Class members who worked more and/or were more egregiously underpaid, and who arguably merit more damages, receive a greater Settlement amount. Ex. C, Bulgarelli Decl. ¶ 25.

In addition to the substantial monetary relief, there is no reversion clause, and funds remaining from non-deposited settlement checks dispersed to the Class will be distributed to two worthy *cy pres* recipients, who have agreed that they will use any funds from the settlement

---

[6] In fact, Defendants' payroll data showed that Defendants at times paid overtime at a rate greater than 1.5 times the regular rate and included such items as paid time off in its calculation of overtime adjustment, thereby resulting in purported overpayments to Class members at times, which would potentially result in a set off against any underpayments.

solely for the purpose of protecting worker rights or promoting job opportunities, job quality, or workplace fairness, thus providing additional benefit to the Class.

In light of the uncertainties of litigation and the potential defenses available to Defendants, this Settlement represents a substantial recovery in light of the difficulties in establishing liability.

### 2. Defendants' ability to pay.

In the context of a class-wide settlement, courts typically consider the defendant's ability to pay. *See Hispanics United of DuPage Cnty. v. Vill. of Addison, Ill*., 988 F. Supp. 1130, 1166 (N.D. Ill. 1997) (finding "[t]here is no dispute that the [Defendant] has the ability to pay the compensation […,] [and t]his satisfies the second fairness factor/").  Defendants ability to pay is not in question, as not only do publicly available records indicate that Verizon Wireless is one of the largest retailers of cellular phones, services and related products and services in the United States and is able to pay the amount of the settlement, but in fact, pursuant to the terms of the Settlement Agreement, Verizon Wireless has already transferred the full amount of the Settlement Fund to the Settlement Administrator who has placed the funds in escrow.  Ex. C, Bulgarelli Decl. ¶ 41.   Therefore, Defendants' ability to pay is not in question and this supports the second fairness factor.

### 3. The likely costs, complexity, and length of further litigation.

"…[C]lass action suits have a well deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).  This case is no exception.  Litigation of the class certification and collective certification issues would require a significant commitment of time and financial resources. Verizon Wireless's position with regard to the merits of Plaintiffs' claims indicates that if litigation ensues, it would engage in an expensive and lengthy discovery

campaign of putative Class members designed to illustrate variation among different employees or a lack of factual support for the claims asserted. In the absence of settlement, a lengthy and expensive trial is a virtual certainty. Given the nature of the case, it is most likely that all post-trial appellate rights would be exercised. *See* Ex. C, Bulgarelli Decl. ¶¶ 19-20. The settlement avoids the uncertainty, substantial time and high costs associated with continuing this complex litigation, in which the parties have endured ongoing disputes over the viability and value of the various claims asserted in the course of arm's-length negotiations, exchanges of extensive discovery, and extended information gathering and data analysis on the varied complex claims. *See generally* Ex. C, Bulgarelli. Verizon Wireless would likely continue to contest this litigation at every stage, including class certification, and given that the fluctuating work week claims are an issue of first impression, an appeal would be highly likely, leading to substantial risks and extended delays to a Class recovery. Ex. C, Bulgarelli Decl. ¶¶ 19-20. The Court should finally approve the settlement because the settlement will minimize the inevitable costs of future litigation of this matter and the attendant delay to Class members' receipt of relief.

### 4.    Opposition and Reaction of the Class

A low rate of opt-outs or opposition reflects favorably on a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2001) aff'd sub nom *In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001) ("Nevertheless, 99.9% of class members have neither opted out nor filed objections to the proposed settlements. This acceptance rate is strong circumstantial evidence in favor of the settlements."); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998) (19,000 opt-outs (.2 percent of the class) and 300 objections were "truly insignificant[]").

Here, the opt-outs and objections are equally insignificant. Only fifteen Class members (less than three hundredths of one percent (0.0272%) of the Class) requested exclusion; and only one Class member (less than 0.002%) objected to the Settlement. Ex. B, Dahl Decl. ¶¶ 31-32. As a result, the combined number of opt-out and objections represent less than 0.03% of the Class, which represents an extreme lack of opposition and strong evidence in favor of the settlement.

Conversely, the strong participation rate further represents a highly favorable reaction by the Class members to the settlement. "The opt-in rate in a FLSA collective action not backed by a union is generally between 15 and 30 percent...." *McCormick v. Festiva Dev. Grp., LLC*, CIV. 09-365-P-S, 2010 WL 582218, *5 (D. Me. Feb. 11, 2010) report and recommendation adopted, CIV. 09-365-P-S, 2010 WL 1064668 (D. Me. Mar. 18, 2010); *see Altier v. Worley Catastrophe Response, LLC*, CIV.A. 11-241, 2012 WL 161824, *24 (E.D. La. Jan. 18, 2012) (noting that a 42% opt-in rate was "a very high rate" and that opt-in rates normally average 15%). Here over 39% percent of the Class, and almost 48% percent of Subclass opted-in. Ex. B, "Dahl Decl." ¶ 27. Therefore, not only was there no significant opposition to the settlement, but the high opt-rates represent an overwhelmingly positive reaction to the settlement.

Additionally, the sole objection in the Class of more than 55,000 Class members reads like a laundry list of unsupported formalistic objections on every ground conceivable in a class action case. (Doc. #154). The letter merely recites the elements this Court has already reviewed once and is tasked with finally reviewing now. By failing to provide any specifics, facts or substantive bases for objection, the letter serves only to reiterate the elements that Plaintiffs have addressed once during the preliminary approval process and in detail herein, and should be overruled. "General objections without factual or legal substantiation carry little weight." *In re*

17

*Rio Hair Naturalizer Products Liab. Litig.*, MDL 1055, 1996 WL 780512, *14 (E.D. Mich. Dec. 20, 1996) (quoting 2 Newberg on Class Actions 3d, § 11.58); *see also Sunrise Toyota, Ltd. v. Toyota Motor Co.*, 1973 WL 778, *6 (S.D.N.Y.1973) (providing that, since an objectant presents contentions that are "merely conclusory allegations […,] presents no facts or evidence of any kind to support his claims […] or general unfairness of the settlement [… and] adduces no specific evidence to support his contentions and since no other class member joins with him, we find his objections without merit.").

The objection does not acknowledge the extensive work involved in case development and settlement, or the extended arm's-length negotiations between Plaintiffs' and Defendants' counsel, nor does it account for procedural battles and risks accompanying protracted litigation. Nor does the objection account for the substantial recovery achieved for the Class as well. *See* generally Ex. C, Bulgarelli Decl.[7]

Therefore, the minimal opposition to the settlement and the corresponding high level of support further confirm that approval of the settlement is appropriate.

5.    Absence of collusion.

"Settlement negotiations that are conducted at arm's length and in good faith demonstrate that a settlement is not the product of collusion." *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, *2 (N.D. Ill. Dec. 10, 2001) (citing *Scholes v. Stone, McGuire & Benjamin*, 839 F. Supp. 1314, 1318 (N.D. Ill. 1993)). The settlement record proves

---

[7] The lone objection is almost word for word identical to another objection filed in a different case (*Doherty v. Hertz Corporation et al.*, 10-cv-00359 (D.N.J.)), which that court did not find persuasive as final approval was recently granted on October 15, 2013. *See* Objection in *Doherty v. Hertz* attached hereto as Exhibit E and Minute Entry granting final approval attached hereto as Exhibit F. Interestingly, the objector in the instant matter has also not just filed an objection, but has also taken the step to file a Claim and Opt-in form, thereby affirmatively opting-in to the FLSA collective and requesting payment from the settlement, while arguing that the Rule 23 class should not be certified.

that the settlement is not the product of collusion. Plaintiffs and Defendants reached this Agreement only after considering: (1) the benefits to the Class; (2) the unfeasibility of individual judgments; (3) the evidence of liability in the case; and (4) the risks, costs, uncertainties, and delays of litigation.

The settlement is the culmination of extensive research, analysis, litigation, discovery, and months of arm's-length negotiation. Ex. C, Bulgarelli Decl. ¶¶ 10-18. Plaintiffs' complaints went through four variants including ultimately being related and consolidated. Plaintiffs and Verizon Wireless have engaged in arm's-length settlement negotiations, and have attended multiple settlement conferences, including two separate settlement conferences in the summer of 2012, in Chicago, Illinois, before the Honorable Maria Valdez, totaling more than ten hours of formal settlement proceedings before Judge Valdez. *Id.* The Parties were able to reach agreement with the assistance of Judge Valdez after conducting extensive discovery analysis of policies, practices and procedures, including exchange and development of various sets of data, exchange of detailed correspondence and data compilations which advocated detailed legal and factual positions concerning hotly contested claims, audio-visual presentation and discussions, extensive analysis of employee time records, aggregated employee data, and overtime payment methods. Ex. C, Bulgarelli Decl. ¶¶ 4-20. Prior to the settlement conferences of July and August 2012, the parties conducted extensive dual track negotiations regarding settlement over a period of several months, while also preparing to brief class certification and for trial. Ex. C, Bulgarelli Decl. ¶ 11. Subsequent to reaching a settlement in principle with the assistance of Judge Valdez, the Parties continued to negotiate over a period of more than five months regarding nearly every aspect and detail of the settlement. Ex. C, Bulgarelli Decl. ¶ 17.

/

6.     Opinion of counsel.

Class Counsel believe this settlement is fair, reasonable, and adequate, especially, in light of the potential for protracted litigation and the Defendants' potential defense that they are entitled to set off overpayments of wages against any underpayments.  *See* Ex. C, Bulgarelli Decl. ¶¶ 19-26.   Class Counsel have litigated numerous class actions, including employment law actions.  *See* Group Ex. D.  Given the circumstances, Class Counsel's opinion should be given great weight because of Class Counsel's extensive experience dealing with the myriad and complex issues involved in this case and class actions generally.

7.     Stage of proceedings and amount of discovery.

The stage of proceedings and amount of discovery supports final approval.  The members of the Class have been identified and the records of their employment have been analyzed.  The Parties have compiled necessary discovery, and exchanged documents and data sufficient for Plaintiffs and their attorneys to evaluate the strength of this case.  Ex. C, Bulgarelli Decl. ¶¶ 6, 8, 10, 30.  Plaintiffs have engaged in extensive legal and computational analysis of the voluminous documents and data provided by Defendants to Class Counsel by request.   Such efforts culminated in an analysis of fifty-two million (52,000,000) lines of Defendants' payroll data and an abundance of analyses of Defendants' policies and procedures.  Ex. C, Bulgarelli Decl. ¶¶ 5-6.  Class Counsel has retained the assistance of multiple experts in the process of analyzing the voluminous productions received from Defendants.   Plaintiffs have amended and ultimately consolidated the complaints via motion practice.  At the time the material Settlement terms were reached, Plaintiffs were prepared to move for class certification and had begun preparing for trial. Ex. C, Bulgarelli Decl. ¶¶ 9, 11.

*//*

20

8. _Public interest._

The public interest is best served by ending this case now. Courts look favorably upon the voluntary resolution of a legal matter through settlement. _E.g._, _Armstrong,_ 616 F.2d at 312. "In the class action context in particular, 'there is an overriding public interest in favor of settlement.'" _Id._ at 312-13 (quoting _Cotton v. Hinton_, 559 F.2d 1326, 1331 (5th Cir. 1977)). "The touchstone for final approval is the effect on the class _as a whole_ in light of the particular circumstances, which include the public policy encouraging comprehensive settlement of class actions and multi-party litigation." _In re Rio Hair Naturalizer Products Liab. Litig._, 1996 WL 780512, *11. In the instant matter, 21,816 Class Members, or approximately 39.6% of the Class have opted into the Settlement and thereby have agreed that the Settlement is appropriate and serves their best interests; as previously noted, this is an astounding percentage of opt-ins. Considering, as discussed above, the complex legal issues involved and the inevitable costs and uncertainties of continued litigation, it is no wonder that so many have opted into this Settlement and only one Class member has objected. The clear alignment of the interests of tens of thousands of Class members with the public interest in favor of settlement supports that the Settlement is fair, reasonable, and adequate.

While each factor discussed above merely serves as a point to consider instead of being a prerequisite to finding that the Settlement is fair, reasonable, and adequate, every factor favors Settlement here. The Court should therefore grant final approval of the Settlement.

**C.     Approval of the Settlement Under the Fair Labor Standards Act is Appropriate.**

Plaintiffs additionally seek the Court's approval of the settlement of the FLSA claims, which they have brought as a collective action. _See Raymer v. Mollenhauer_, 3:10-CV-210-PS, 2011 WL 338825 (N.D. Ind. Jan. 31, 2011) ("...acknowledging that settlements of claims under

the FLSA require court approval."). "Unlike a class action under Rule 23(b), in which potential plaintiffs are included in the class unless they opt-out, a § 216(b) collective action requires potential plaintiffs to 'affirmatively opt-in to the suit by filing a written consent with the court.'" *Nehmelman v. Penn Nat. Gaming, Inc.,* 822 F. Supp. 2d 745, 750 (N.D. Ill. 2011) (quoting *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010)). FLSA collective actions do not raise the same due process concerns as Rule 23 actions, as a failure to opt-in does not prevent someone from filing their own lawsuit at a later date. *See McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Johnson v. Brennan*, 10 CIV. 4712 CM, 2011 WL 4357376, *12 (S.D.N.Y. Sept. 16, 2011) (approval under Rule 23 standards inapplicable to an FLSA settlement).

When evaluating an FLSA to see if it should be approved, courts look to see if the settlement was reached "…as a result of contested litigation to resolve bona fide disputes." *Id.*; *see also deMunecas v. Bold Food, LLC*, 09 CIV. 00440 DAB, 2010 WL 3322580, *7 (S.D. N.Y. Aug. 23, 2010) ("Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes.").[8]

As discussed *supra*, the settlement was only reached after extensive research, analysis, litigation, discovery, and months of negotiations, including two separate settlement conferences before the Honorable Maria Valdez and five additional months of negotiation over the terms of the Settlement Agreement. The result was a settlement of a *bona fide* dispute in which Plaintiffs' believed that they and other Verizon Wireless employees were not receiving compensation owed

---

[8] Additional analysis for final approval of an FLSA collective may be undertaken only when the settlement is reached after the court has conditionally certified the collective. *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 993-994 (N.D. Ind. 2010); *Carter v. Anderson Merchandisers*, LP, EDCV 08-0025-VAP OPX, 2010 WL 1946784, *4 (C.D. Cal. May 11, 2010).

to them, while Verizon Wireless indicated it had no liability and had in fact overpaid its employees.  Ex. C, Bulgarelli Decl. ¶¶ 18-20.   As a result, approval of the FLSA settlement is appropriate.

### VI.    **The Notice Supports Final Approval.**

In compliance with the Court's May 1st, 2013 Order preliminarily approving the settlement (Doc. #139) and pursuant to the Court's directive at the July 25, 2013 status conference directing that notice be sent out by August 1, 2013, the Parties caused the approved Class Notice to be mailed to the class members.  Rule 23(e)(1) requires, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Under federal law, notice of the settlement must satisfy due process.  *In re Mexico Money Transfer Litig*., 164 F. Supp. 2d at 1012; *In re Telesphere Int'l Sec. Litig.,* CIV. A. 89 C 1875, 1990 WL 93367, *2 (N.D. Ill. June 21, 1990) *Maher v. Zapata Corp*., 714 F. 2d 436, 450-453 (5th Cir. 1983).  The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take.  *Tylka v. Gerber Products Co.*, 182 F.R.D. 573, 578 (N.D. Ill. 1998); 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005).

Here, the Notice was sent by first-class mail to the Class members.  Ex. B, Dahl Decl. ¶ 14.  In order to protect the rights of absent Class members, the Court must provide the best notice practicable to Class members. *Phillips v. Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985); *Chaffee v. A&P Tea Co*., 79 C 2735, 1991 WL 5859, *3 (N.D. Ill. Jan. 16, 1991).  Notice by first class mail is practical when the names and addresses of most of the Class members are known. *See Manual for Complex Litigation* at §21.311 (2012); *see also In re VMS Ltd. P'ship Sec. Litig*., 90 C 2412, 1995 WL 355722, *1 (N.D. Ill. June 12, 1995) (holding that "[f]irst class mail will

generally satisfy Rule 23(c)(2)'s requirement of the best notice practicable under the circumstances"); *Hughes v. Merit Lincoln Park LLC*, 08-CV-6191, 2011 WL 6028535, *1 (N.D. Ill. Dec. 5, 2011).

Moreover, the Notice and other useful information about the instant action and the Settlement have been posted on a dedicated Internet website to supplement individual notice. Ex. B, Dahl Decl. ¶¶ 18-19; *see* Manual for Complex Litigation at §21.311 (2012) ("Posting notices on dedicated Internet sites, likely to be visited by class members and linked to more detailed certification information, is a useful supplement to individual notice […] and will become increasingly useful as the percentage of the population that regularly relies on the Internet for information increases.").

Notice of the proposed settlement of this action was also mailed via Certified Mail to the Attorneys General in all fifty states and the District of Columbia, and to the U.S. Attorney General, in compliance with all requirements of the Class Action Fairness Act ("CAFA"). Ex. B, Dahl Decl. ¶ 7.

Additionally, the content complied with the notice required for a contested class. Fed. R. Civ. Pr. 23 (c)(2)(B) (notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c)(3)."). Here, the content of the Notice stated all those things. *See* Notice and Claim and Opt-In form, Dahl Decl. Group Ex. B(B).

Moreover, Class Counsel has engaged in significant efforts to guide the notice process and oversee the work of the Settlement Administrator's efforts to ensure the best possible notice was affected. Ex. C, Bulgarelli Decl. ¶¶ 31-33. Working at the direction of Class Counsel, the Settlement Administrator has created and maintained a website that provides not only the full Notice, but makes all the relevant court documents and a myriad of other helpful information available to the Class. Ex. B, Dahl Decl. ¶¶ 18-20; Ex. C, Bulgarelli Decl. ¶ 31.

The Settlement Administrator mailed the Notice with a prepaid and preaddressed return envelope included in the notice packet, at additional expense, to ensure that Class member responses would be as easy as possible. Ex B, Dahl Decl. ¶ 13. Further, Class Counsel directed that the notice mailing envelope include a printed quick-response code, known as a "QR" matrix barcode, which instantly connects Class members to the settlement website when scanned by a mobile device. Ex. B, Dahl Decl. ¶ 13; Ex. C; Bulgarelli Decl. ¶ 31. The website created by the Settlement Administrator, and edited extensively by Class Counsel, allowed class members to submit their Claim and Opt-In form online. Ex. B, Dahl Decl. ¶ 19; Bulgarelli Decl. ¶ 31. Claims could also be submitted by fax, email, or via the prepaid preaddressed envelopes mailed with the notice documents. Ex. B, Dahl Decl. ¶ 19.

Class Counsel and the Settlement Administrator have dutifully fielded a wealth of calls from class members in order to answer their questions and facilitate the Settlement. Ex. B, Dahl Decl. ¶ 24; Ex. C, Bulgarelli Decl. ¶ 34. Further, Class Counsel has ensured that every phone call and email received by Class Counsel from any Class Member or directed to Class Counsel by the Settlement Administrator was and will continue to be responded to and addressed. Ex. C, Bulgarelli Decl. ¶ 34.

As per the Settlement Agreement, the Settlement Administrator went beyond merely mailing the notice to the last known addresses of the Class. In addition to utilizing forwarding addresses provided by the U.S. Postal Service and using an automated address search firm to "skip trace" undeliverable mail, where the address search firm's automated review of records failed to yield a satisfactory result, the Settlement Administrator engaged in manual searches of the available records provided by the service and simultaneously sent records to Verizon Wireless. Ex. B, Dahl Decl. ¶ 16. At the request of Class Counsel, Verizon Wireless searched their records to determine, where possible, whether an alternate means was available for updating the out-of-date address (*e.g.* requesting current employees update their out of date records). *Id.* These supplementary skip tracing efforts performed as a result of Class Counsel's negotiations and requests yielded new mailing addresses for more than 500 of the otherwise undeliverable notice packets and greatly expanded the reach and effectiveness of the notice process. *Id.* These efforts were the best practicable as any further efforts to track down individual class members would have required unreasonable further expense and time. The extensive work of Class Counsel during the process and the efforts of the Settlement Administrator resulted in an excellent response from the Class with more than 39% of the Class submitting a claim and less than .03% choosing to exclude themselves or object. Ex. B, Dahl Decl. ¶ 27.

In conclusion, the Notice meets the legal standards for appropriate notice and satisfies Rule 23. Therefore, the Court should find that the Notice complied with the Rules of Civil Procedure and due process.

//

26

## VII.    The Agreed Attorneys' Fees Are Appropriate.

Verizon Wireless has agreed to pay Class Counsel's fees, costs, and expenses totaling one-third of the Settlement Fund.[9]  (Doc. #133-1 ¶¶ 9, 10(c)(iv)).  Class Counsel undertook the case on a contingency basis and obtained a favorable settlement for the Class.  (Ex. C, Bulgarelli Decl. ¶¶ 21-26, 37.  The Notice informed Class members about Class Counsel's attorneys' fee request, and only one Class member has objected.   Likewise, the CAFA notice informed government entities about the attorneys' fee request, and none objected.  Ex. B, Dahl Decl. ¶ 7.

Courts in the Seventh Circuit have long recognized that the risk undertaken by attorneys by litigating a contingency fee case is an important factor in determining the fee award.  *See*, *e.g.*, *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994); *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379-380 (N.D. Ill. 2011).   It is well settled that attorneys who recover a common fund for class members are entitled to compensation for their work from the fund instead of directly from the pockets of the class members.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1249 (N.D. Ill. 1993).

Furthermore, the percentage method is preferred over other methods of fee award calculation.  *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund."); *Goldsmith v. Tech. Solutions Co.*, 92 C 4374, 1995 WL 17009594, *7 (N.D. Ill. Oct. 10, 1995) ("…the Seventh Circuit strongly endorsed the percentage method of computing

---

[9] The fee agreements with each Named Plaintiff provide that Class Counsel is entitled to one-third of the recovery, plus costs and expenses.  Ex. C, Bulgarelli Decl. ¶ 36.  The fee and cost award of one-third of the Settlement Fund, which Class Counsel now asks this Court to approve, is less than the fee agreements with each Named Plaintiff, as the one-third requested is inclusive of amounts to reimburse counsel for out of pocket costs and expenses.

appropriate fee awards in class action common fund cases such as this."); *Will v. Gen. Dynamics Corp.*, CIV. 06-698-GPM, 2010 WL 4818174, *2 (S.D. Ill. Nov. 22, 2010) ("[t]he Seventh Circuit Court of Appeals uses a percentage basis rather than a lodestar or other basis when determining a reasonable fee.")

"…[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services…." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001); *see Gaskill*, 160 F.3d at 363 ("[w]hen a fee is set by a court rather than by contract, the object is to set it at a level that will approximate what the market would set."). As a result, courts look to what the percentage in the marketplace for contingency litigation is when determining the percentage of a common fund recovery. *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("[t]he class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client."); *Will*, 2010 WL 4818174 at *2 ("[w]here the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, 'the normal rate of compensation in the market' is "33.33% of the common fund recovered.'").

Here, Class Counsel's request of one-third of the Settlement Fund, which is equal to the common marketplace rate for contingency litigation. *See Goldsmith*, 1995 WL 17009594 at *8 ("[t]hirty three percent appears to be in line with what attorneys are able to command on the open market in arms-length negotiations with their clients."); *In re Kentucky Grilled Chicken Coupon Mktg.*, 280 F.R.D. at 380 ("[i]ndeed, using the market percentage method in the courts of the Seventh Circuit, as one court has observed, results in awards of attorney's fees 'equal to approximately one-third or more of the recovery.'"); *City of Greenville v. Syngenta Crop Prot.,*

*Inc.*, 904 F. Supp. 2d 902, 909 (S.D. Ill. 2012) ("[c]ourts throughout the Seventh Circuit routinely consider the fee awards in other class actions and conclude that a one-third contingency fee is standard."); *Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc*., 02-CV-1109-DRH, 2004 WL 768658, *1 (S.D. Ill. Mar. 19, 2004) ("[i]n this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action in not uncommon. The utilization of the market percentage method, as one district court has observed, results in awards of attorneys' fees 'equal to approximately one-third or more of the recovery.'")

Not only is an attorneys' fee award of one-third of the Settlement Fund the norm for class actions, it is also the common specifically for wage and hour cases. *See Burkholder*, 750 F. Supp. 2d at 997 (finding that 33.3% of the common fund was typical attorneys' fee for wage and hour case and awarding 33.3% fee); *Faican v. Rapid Park Holding Corp*., 10-CV-1118 (JG), 2010 WL 2679903, *2 (E.D.N.Y. July 1, 2010); *McMahon v. Olivier Cheng Catering & Events, LLC*, 08 CIV. 8713 (PGG), 2010 WL 2399328, *7 (S.D.N.Y. Mar. 3, 2010); *Rotuna v. W. Customer Mgmt. Grp., LLC*, 4:09CV1608, 2010 WL 2490989, *8 (N.D. Ohio June 15, 2010). *See also,* orders of United States District Courts in the Illinois market, attached hereto as Group Ex. G: *Romo v. Manpower, Inc.,* Case No. 09 C 3429 (N.D. Ill. Nov. 29, 2012) (awarding one-third of $8,000,000 common fund plus costs in wage class action); *Hardaway vs. Employbridge of Dallas, Inc.*, Case No. 11 C 3200 (N.D. Ill. Apr. 4, 2013) (awarding one-third of $1,500,000 common fund in wage class action); *Peraza v. Dominick's Finer Foods, LLC,* Case No. 11 C 8390 (N.D. Ill. Mar. 18, 2013) (awarding one-third of $1,450,000 fund, plus costs, in wage and hour class action); *Rosales v. The Placers, Ltd.,* Case No. 09 C 1706 (N.D. Ill. Feb. 7, 2012) (awarding one-third of $1,650,000 common fund plus costs in wage class action); *Gonzalez v. Plastival, Inc.*, Case No. 05 C 04864 (N.D. Ill. Sept. 23, 2008) (awarding 33 percent of the fund

plus costs in class action overtime wages settlement); *Perry v. National City Bank et al.*, Case No. 05 C 891 (S.D. Ill. March 3, 2008) (awarding 33 percent of the settlement fund of $27,500,000 to attorneys in a FLSA overtime wages case); *Williams v. Volt Management Corp*, Case No. 10 C 3927 (N.D. Ill. Oct. 13, 2011) (awarding one-third of $2,500,000 common fund in wage class action); *Schmidt v. Smith & Wollensky LLC*, Case No. 09 C 2752 (N.D. Ill Aug. 18, 2011) (awarding 33.9 percent in fees and costs in wage and hour class action). u

Here, Class Counsel's requests one-third of the Settlement Fund inclusive of reimbursement of litigation expenses, and in fact the one-third requested from the Settlement Fund is actually less than one-third of the benefit conferred when you factor the additional $241,000 paid to date for settlement administration (with more costs still to follow) outside of the monies earmarked for the Settlement Fund. Ex. B., Dahl Decl. ¶¶ 33-34; Ex. C, Bulgarelli Decl. ¶ 22.

Class Counsel has expended significant efforts and outlaid significant funds on a contingency basis, to obtain substantial benefits to the Class, as described herein. *See e.g.* Ex. C, Bulgarelli Decl. ¶¶ 21-25, 30-38). The Court should approve Verizon Wireless' agreement to pay Class Counsel's fees, costs, and expenses.

**VIII.** **The Enhancement Awards and Payments to Plaintiffs are Appropriate.**

Additionally, the Court should approve Verizon Wireless' agreement to pay up to $12,500.00 to Jeremy Cioe and $12,500.00 to Sarom Ped. (Doc. # 133-1 ¶ 10(c)(v)). Enhancement awards are "designed to encourage individuals to become named plaintiffs." *Meyenburg v. Exxon Mobil Corp.*, 3:05-CV-15-DGW, 2006 WL 2191422, *2 (S.D. Ill. July 31, 2006). These payments recognize Plaintiffs' service as class representatives and their contribution to a favorable settlement for the entire class and are in consideration of the fact that

Mr. Cioe and Mr. Ped, in addition to the limited release applicable to all class members, further fully release and discharge any and all claims against all Defendants. (Doc. #133-1, ¶¶ 16, 17). In considering whether enhancement awards are appropriate, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Class Representatives Jeremy Cioe and Sarom Ped assisted Class Counsel with conceiving what discovery to request and in reviewing productions of documents and data from Defendants, regularly consulted with Class Counsel, attended the first settlement conference in person,[10] and otherwise facilitated the litigation, negotiation, and settlement of this matter. Ex. C, Bulgarelli Decl. ¶ 27; *see Williams v. Rohm & Haas Pension Plan*, 4:04-CV-0078-SEB-WGH, 2010 WL 4723725, *2 (S.D. Ind. Nov. 12, 2010) (awarding the class representative with an incentive award for spearheading the lawsuit and bringing the matter to a successful conclusion for the class) *aff'd*, 658 F.3d 629 (7th Cir. 2011).. Both Class Representatives have taken a substantial risk in pursuing the instant litigation as they both continue to work in the retail industry after leaving employment with Verizon Wireless, with only the possibility of recovering a modest amount of unpaid wages. *Meyenburg*, 2006 WL 2191422 at *2 (awarding an enhancement award to a class representative for taking "the inconvenience and risk of pursuing litigation with only the possibility of monetary gain that at best would be modest"). By taking this risk, they played an essential role in reaching a favorable settlement of $7,721,000.00 for the Settlement Class. Ex. C, Bulgarelli Decl. ¶ 28.

---

[10] Class Representatives made themselves available for the second settlement conference, but the Judge Valdez allowed them to be absent on the condition, which they fulfilled, that they be available by phone for the entirety of the conference.

The enhancement award amounts requested for the Class Representatives and agreed to by Defendants are well within the amounts regularly awarded by courts to class representatives. *See*, *e.g.*, *Cook*, 142 F.3d at 1016 (affirming a $25,000 enhancement award to a class representative); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 07 CV 2898, 2012 WL 651727, *16-17 (N.D. Ill. Feb. 28, 2012) (awarding a $25,000 enhancement award each to seven class representatives), *appeal dismissed*, 710 F.3d 754 (7th Cir. 2013); *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (approving two enhancement awards of $55,000 and three of $35,000 to five representatives).

Class representatives assume the burdens of litigation that absent class members do not bear and do so without promise of a reward and with the risk that the litigation may not succeed. Class Representatives in this case were no exception; but for their initiative and participation, the benefits available to all class members would not have been realized. The Court should therefore approve Plaintiffs' enhancement awards and payments.

## IX.    Conclusion.

WHEREFORE, Plaintiffs Jeremy Cioe and Sarom Ped respectfully request that the Court enter the parties' agreed final approval order, which is submitted herewith as Exhibit A.

Respectfully submitted,

Jeremy Cioe and Sarom Ped, on behalf of themselves and all similarly situated persons

s/ Mark A. Bulgarelli, Esq.
Mark A. Bulgarelli

Mark Bulgarelli, Esq
Ilan Chorowsky, Esq.
Alex Stepick, Esq.
PROGRESSIVE LAW GROUP LLC
1 North LaSalle Street, Suite 2255
Chicago, Illinois 60602

(312) 787-2717 (voice)

Robin Potter, Esq.
ROBIN POTTER & ASSOCIATES, P.C.
111 East Wacker Street, Suite 2600
Chicago, Illinois 60601
(312) 861-1800 (voice)